New-York and Harlem Railroad Co. *v.* Lyon.

——————————•◆•——————————

THE NEW-YORK AND HARLEM RAILROAD CO. *vs.* LYON.

Assessors are not authorized by the statute, to insert in the assessment rolls the names of non-resident owners of real estate. In the case of a non-resident, the *land* is to be assessed, without naming the owner.

Consequently no person is charged with, nor rendered liable to pay, the taxes imposed upon the lands of non-residents.

Nor can the collector levy a tax upon any personal property of non-residents; inasmuch as his warrant only authorizes him " in case any person *named in the assessment roll* shall refuse or neglect to pay his tax, to levy the same by distress and sale of the goods and chattels of such person."

The warrant does not authorize the seizure and sale of the property of persons not named, or whose names it is apparent from the face of the papers the assessors had no right to set down.

In such a case the want of the requisite power to seize and sell the personal property of the person assessed, appears upon the face of the instrument to which the warrant refers as explanatory of the directions which it contains.

THIS action was brought to recover damages of the defendant for seizing and selling two freight cars of the plaintiffs, upon their railroad track in the town of Bedford, in the county of Westchester. The defendant justified the taking, as collector of the town of Bedford, under a tax-warrant duly issued to him by the board of supervisors of said county. The answer

alleged that in the assessment roll accompanying such warrant, among other persons under the words " non-residents" the said plaintiffs by the name of the " Harlem Railroad" in the words and figures following :

"Harlem Railroad,          Acres.      Real.      Tax.
6 miles track and 3 stations,      56.      60,000.      220,88."
were assessed and taxed for real estate owned by them in the said town of Bedford, to the quantity of fifty-six acres of land, composed of six miles of their track and three stations ; which property was valued at $60,000, and a tax imposed thereon of $220,88 ; that the defendant after receiving the said tax-warrant and assessment roll, proceeded to collect the same in the said town of Bedford, pursuant to the laws and statutes of this state.   That being unable to obtain payment of the said tax, he, on the 5th day of February, 1853, at Katonah station in the said town of Bedford, found the said two freight cars belonging to the plaintiffs, standing empty on the side track of their railroad, and levied upon and sold the same, and subsequently sold one of the said cars, at public auction, in the manner directed by the statute, to satisfy the said tax, and that the same was bid off by B. Bailey, in behalf of the plaintiffs, for $240.   That the other car had been returned to the plaintiffs.   The cause was tried at the Westchester circuit, in September, 1853, before Hon. S. B. Strong, justice, when a verdict was taken for the plaintiffs, subject to the future direction of the said justice.

*B. Bailey*, for the plaintiffs.

*J. W. Tompkins*, for the defendant.

S. B. Strong, J.   The warrant under which the defendant claims a justification for seizing and selling the plaintiffs' cars in the town of Bedford, required him, as collector of that town, to collect from the several persons *named* in the assessment roll annexed to it the several sums mentioned in the last column on each page, opposite to their respective *names :* and

authorizes him, in case any of them should refuse or neglect to pay such sum, to levy the same by distress and sale of his goods and chattels. The defendant insists that the plaintiffs are named in the assessment roll annexed to his warrant, and that therefore he was authorized, on their refusal to pay the tax, which was proved on the trial, to take and sell their personal property in the town of Bedford. The plaintiffs contend that they are not named at all in the roll; or that if they are, there is sufficient in that paper to show that it was done without competent authority. If the plaintiffs are right in either of these positions, the alleged justification must fail. The warrant does not authorize the seizure or sale of the property of persons not named, or whose names it is apparent from the face of the papers, the assessors had no right to set down. What is stated in the roll, so far as it relates to the plaintiffs, is in a part of it separate from the assessment of the property of the taxable inhabitants of the town, in a first column, headed "non-resident," and in the following words: "Harlem Rail Road, about 6 miles track and three stations." The jury found by their verdict that the plaintiffs are generally designated as "The Harlem Rail Road"; and although that is not their corporate name, yet it resembles it sufficiently to denote the company if it is apparent that it was so intended by the assessors. Its direct and more appropriate application is to the road itself, and the defendant was not authorized, nor am I, to interpret it as the nominative of the company, without some correspondent evidence; and in this case there was none. I am, however, unwilling to decide this case simply upon verbal criticisms, and shall therefore consider the more substantial question, whether the assessors are authorized by the statute to insert the names of non-resident owners in their rolls.

It is apparent from the first section of title 1 of the chapter of the revised statutes relative to the assessment and collection of taxes, that it was designed to make provision for the assessment and taxation of all lands and all personal estate within this state, subject to certain exemptions which are inapplicable to this case. By the 2d title of the same chapter, the

lands in each ward and town are divided into two classes; those of residents, and of non-residents. There is no other specification or distinction. It is true that the third section of this title defines the "lands of non-residents" as *unoccupied* lands not owned by a person residing in the town or ward where the same are situated; and it was contended by the counsel for the defendants that, as the road was confessedly occupied by the plaintiffs, as was stated in their complaint, the provisions of the statute relative to the assessment of non-residents were inapplicable. That might be so, if the word "unoccupied" was used to distinguish a part only of the lands of non-residents. If that had been the design, the article "the" should have been prefixed to the word "unoccupied." As the sentence stands, "unoccupied lands, not owned by a person residing in the ward or town" may well be considered as a phrase and its definition. The statute may thus be construed to mean the absence of residentiary occupation by the owner. That this is the true construction, is, I think, evident from the following considerations. There is no provision in the statute, for the assessment of the lands of persons residing out of the ward or town, whether occupied in fact or vacant, except as the lands of non-residents. The article of the revised statutes in which the provision is inserted purports to designate the place in which property generally is to be assessed. No exception is mentioned, and there can be no reason why any should be inferred. There is no provision in the statute, nor in any subsequent act, for the collection of unpaid taxes, except upon the lands of residents or non-residents as designated by the statute. The unpaid tax on the land of a resident may be imposed the following year upon the same land; and by the fifth section of the act of April 10, 1850, if that and the tax for the succeeding year shall remain unpaid or uncollected, the same proceeding shall be had thereon as if it was the land of a non-resident. When the tax upon the land of a non-resident remains unpaid, the land may be eventually sold by the state comptroller. All these provisions have reference to the designation used in the statutes, and if they do not embrace the lands actually occupied by non-residents, they

New-York and Harlem Railroad Co. v. Lyon.

cannot be assessed; or, should they be assessed, there is no provision to coerce the ultimate payment of the tax. The 27th section of the 3d title of the chapter of the revised statutes providing for the imposition and collection of taxes makes provision for the eventual collection of taxes on any farm or lot of land assessed to a resident, which "shall be returned as unpaid, in consequence of such premises becoming *vacant* by the *removal* of the occupant." This has reference to his removal from the ward or town, and implies that such removal would put an end to the occupancy, as the term is used in the statute. There are other provisions in the statute, confirmatory of this interpretation, but I deem it unnecessary to quote them.

The remaining question is whether the assessors are authorized to name in their rolls the actual or supposed owners of what the statute denominates non-resident lands. They are expressly required to set down in a particular column the *names* of all the taxable *inhabitants* of their town or ward. There is no provision requiring or authorizing them to set down the names of non-residents. On the contrary, they are required to insert in a column, similar to that containing the names of the residents, and apparently as a substitute therefor, descriptions of the lands of such non-residents. The only reference to the names of the owners is in the provision for the description of a subdivision of a tract, where they are required to put down in a first column the number of the lot *without the name of the owner*. By the 26th section of title 2, the assessors are required to certify, and by the 8th section of the act of April 15, 1851, they are required to swear, that their assessment roll contains a true statement of the aggregate amount of the taxable *personal* estate of each and every person *named* in the said roll, over and above the amount of his debts and taxable stocks. Now, as they cannot insert in their roll the amount of the taxable personal estate of non-residents, this provision, construed literally, implies that their names should not be inserted at all. If it had been designed that such names should be inserted, the application of this part of the certificate and oath should, and no doubt would, have been expressly restricted to residents.

The reason why the names of residents should be inserted in the roll, and those of non-residents omitted, is palpable. The assessors have general jurisdiction to assess the property and thereby effectuate the imposition of a tax upon the residents of their respective towns and wards. A mistake as to their property would not vitiate the assessment, nor should it, as all residents know where they are liable to be assessed, and where to go to ascertain whether their property has been over estimated, and, if so, obtain the appropriate correction. But the assessors have not, and should not have, any such general jurisdiction as to non-residents. None such is conferred by the statute, nor can they take it by implication. The statute gives them jurisdiction over the *land* only; to assess *that*. If it had conferred upon them the power to assess the land to non-residents by name, their action could not be impeached collaterally; nor could they be rendered liable for a wrong judgment; nor could any ministerial officer, for enforcing it. Thus a non-resident, taxed for land to which he had no title, would be nearly, if not wholly, remediless, and that too in a case where he had no reasonable preventative. Not having any land in the town he would not have had any reason to make a preliminary examination of the assessment roll. If however, it had been designed to confer a qualified jurisdiction over non-residents, limited to those who might own lands in the town, the difficulty would be shifted, but it would be still very great. If there should be a mistake, and the wrong person assessed as owner, the assessment and tax would be null and void, and innocent persons, who were compelled to act, might be subjected to ruinous litigation. Now, all these difficulties may be avoided by construing the statute to direct what its language purports, and nothing more—that in the case of a non-resident the land shall be assessed, without naming the owner. There can be no mistake as to the land. The assessment upon that would be valid, whoever might be the owner. The actual owner knows where his land lies, and where it should be assessed. He also knows where to inquire as to the value put upon it, and where to obtain a correction, if any should be

New-York and Harlem Railroad Co. *v.* Lyon.

proper, and where to pay his tax. No injustice would therefore be done to him, if he should exercise due caution, and pay his tax when and where it ought to be paid.

There is nothing in the affidavit as to unpaid taxes, which the collector is required to make, at variance with this construction of the statute. He is required to swear that he has not, upon diligent inquiry, been able to discover any goods or chattels belonging to, or in the possession of, the person charged with, or liable to pay, such sums, whereon he could levy the same. If the assessors are not authorized to name non-resident owners, no person is charged with, nor rendered liable to pay, the taxes imposed upon their lands. Nor can the collector levy the tax upon any personal property of non-residents, as his warrant only authorizes him "in case any person *named in the assessment roll* shall refuse or neglect to pay his tax, to levy the same by distress and sale of the goods and chattels of such person." (1 *R. S.* 396, § 37, *sub.* 5.) I have mentioned one class where the assessors are expressly prohibited from setting down the names of non-resident owners. Clearly, the collectors are not authorized to levy upon the personal property of such owners; nor, as I conceive, can they do so upon the property of any non-residents. If, therefore, the affidavit has any reference to the taxes on the lands of non-residents, the collector can safely make it, as to them, in all cases where the taxes have not been voluntarily paid.

In the case under consideration the land was assessed as the property of non-residents. The want of the requisite power to seize and sell their personal property was apparent upon the face of the instrument, to which the warrant referred as explanatory of the directions which it contained. The presumption that every one must be acquainted with the law applicable to his own conduct, is necessary to the due administration of justice, although in many instances, and probably in that now under consideration, it is a strange one, and may operate very hard.

Upon the whole, I am satisfied that the defendant had no authority to levy upon the personal property of the plaintiffs,

Stimson v. Huggins.

A verdict and consequent judgment must therefore be entered for the plaintiffs, for the amount paid by them, or in their behalf, to the defendant.

[SUFFOLK SPECIAL TERM, December 12, 1853. S. B. Strong, Justice.]