## PATCHIN *vs.* RITTER.

An individual banker, doing business under the general banking law of this
state, who assumes a special name by which his business as banker is char-
acterized and known, may be assessed by that name, and the warrant for
the collection of the tax, issued against such name, may be levied upon the
money or property used in the business of such banker.

The question whether such banker was taxable in the town or ward in which
the assessment was made cannot be raised to affect the validity of process
regular on its face, against the officer executing it; nor—where the process
is against an individual bank, by the name in which it does business, which
name is apparently that of a corporation, and such bank has a place of
business within the jurisdiction of the assessors and of the officer execut-

ing the process—can its owner be permitted, as against the officer levying on the money or property of the bank, to claim that it is not a lawful corporation, and not taxable by its apparently corporate name.

THIS action was brought to recover damages for the taking of $324.25 in bank bills and coin, alleged to be the property of the plaintiff. The money was taken by the defendant at the banking house of the Pratt Bank of Buffalo, (which bank was owned by the plaintiff as an individual banker,) and was money owned and used by him in the business of said bank. The banking office was located, and the business of the bank was, and for several years had been, carried on in the first ward of the city of Buffalo, under and by the name of "The Pratt Bank." The plaintiff resided in the ninth ward of said city. The defendant, who was a constable of said city, justified the taking, by virtue of a warrant issued to him by the receiver of taxes of the city of Buffalo, for the collection of a tax alleged to have been assessed and imposed by the supervisors of the county of Erie against the said the Pratt Bank. The action was tried at the Erie circuit before Mr. Justice WELLES, without a jury, and a decision rendered in favor of the plaintiff. The defendant appealed to the general term from the judgment entered on such decision.

*A. Sawin,* for the appellant.

*C. Tucker,* for the respondent.

*By the Court,* DAVIS, P. J. It was insisted on the argument of this cause, by the respondent's counsel, that the assessment was void, on the ground that the plaintiff was a resident of the ninth ward of the city of Buffalo, and the assessment was made in and by the assessors of the first ward ; and several authorities were cited to sustain this position. It is not material to examine this question, in the view in which it was presented. The defendant was a public officer acting under and by virtue of a warrant, regular in form, and show-

ing (so far at least as this question is concerned,) no want of authority in the assessors.

In *Suydam and Wyckoff* v. *Keys*, (13 *John.* 444,) the defendant was collector of a school district, and acting under a warrant for the collection of taxes' issued by the trustees of his district. The trustees were authorized by law to assess the *resident inhabitants* of the district, only. The plaintiffs had property in, but were not residents of the district. They were included among the persons assessed; and the defendant by virtue of his warrant seized and sold their property for the tax. He was held liable as a trespasser. But in the leading case of *Savacool* v. *Boughton*, (5 *Wend.* 170,) in which all the authorities are examined and commented upon, with the masterly ability which distinguished the late Mr. Justice Marcy, by whom the opinion was pronounced, the conclusion of the court in *Suydam and Wyckoff* v. *Keys* was critically examined, and shown to be erroneous in principle as well as in conflict with authority. " I cannot," says the learned judge, in that case, " distinguish this case from a whole class of cases, beginning with the earliest reports and coming down to this, holding that such a warrant is a protection to the officer executing it, unless it is to be distinguished from cases otherwise similar, by the fact that the want of jurisdiction in the trustees to make the assessment on the plaintiffs, was to be presumed to be within the knowledge of the officer, and that he was bound to act on this knowledge, in opposition to the statements of his warrant." And again, after commenting upon another case, and contrasting the ruling in *Suydam and Wyckoff* v. *Keys*, with that, he adds: " I should think that the collector was no more bound to examine into the fact of residence, which had been passed on by the trustees, than the constable to look into the proceedings of the special sessions on which he acted."

The principle established in *Savacool* v. *Boughton* has not only been recognized and followed by this court, ever since that decision, but has lately been reaffirmed and applied by

the court of appeals, (*Chegaray* v. *Jenkins,* 1 *Seld.* 376.) In the latter case the assessment was upon "a seminary of learning," property expressly exempted from taxation by statute, and being real estate, it was doubtless described and identified in the assessment roll. The defendant was held protected by his warrant, on the ground that it is no part of the duties of a subordinate officer to overrule, or "to dispute the authority of his superiors unless upon grounds apparent on the face of their mandate. The law does not give him the means of ascertaining extrinsic facts for this purpose, nor does it attribute to him the capacity for reviewing the assessment on such facts, if they could be ascertained." The question whether "The Pratt Bank" should be assessed by that name, or in the name of the plaintiff, in the ward where the banking house was located and the business of the bank carried on, or in the ward where its owner resided, is therefore not here to be determined.

But it is argued, "the assessment and warrant were not against the plaintiff, nor against any natural or artificial person, and were void for that reason." The warrant, upon its face, was against "The Pratt Bank," *eo nomine,* and not against the plaintiff by name. The argument, to be effectual to render the warrant invalid, must go the length of establishing that the officer to whom it was directed was bound to know that "The Pratt Bank" was neither a natural nor an artificial person. The evidence in the case shows that a "banking office" was kept by the plaintiff, in the city of Buffalo; that over said office was kept up a sign with the words "Pratt Bank of Buffalo;" that the banking business was carried on in the name of "The Pratt Bank;" that the bills issued at this office as money, though signed by the plaintiff as banker, were issued in the name of "The Pratt Bank of Buffalo;" that the returns to the banking department of the state were made by the plaintiff in the name of "The Pratt Bank of Buffalo," the plaintiff verifying the same as president of that institution; that before the assess-

ment was made he had served on the assessors a notice dated at Pratt Bank, stating that " the *capital stock* of the bank, after deducting real estate located in Buffalo," was a specified sum, which notice was subscribed and verified by him as " President of· Pratt Bank ;" indeed, that every act and all the business pertaining to the bank were done in the name given in the assessment and warrant.  All the indicia and par-apharnalia of a moneyed corporation surround the plaintiff's office and its business ; and these he has christened by an artificial name indicative of a corporation.  The assessors, from these various facts, have erroneously, perhaps, assumed the bank to be a corporation, and designated it, in their roll, by the name given it by its owner.  The supervisors, follow-ing this error, have imposed the tax in the same name ; and the warrant to the officer, in all other respects in due form of law, is issued against the Pratt Bank, as though it were a corporation.  With the banking house before his eyes, bearing its sign, and transacting its business in that name ; its president and cashier using " bank bills and coin " on its counter, in its business, and within reach of the officer, is he to sit down and review the action of the assessors, and delib-erate upon the nice question whether this bank is a corpora-tion or an individual ; an artificial or a natural person ; an individual banker, with a *nom de plume,* or an incorporated institution with a substantive name ?  If this be his duty, it is certainly a delicate and embarrassing one ; for if he decide it not to be a corporation, either sole or aggregate, and refuse to act, and *misjudge the law or fact,* he is punishable, both civilly and criminally, for his neglect of duty ; if he decide the reverse, and enforce the tax, and thus misjudge the law or fact, he is subject to be harassed by suit and mulcted in damages.  Nor can he decide the question, except upon ex-trinsic facts, which may or may not be within his knowledge, or which he may or may not have the means of ascertaining. The warrant contains nothing on its face to show him the error of the assessors, but is in strict accordance with the ex-

ternal evidence before him. It is difficult to see why the officer thus situated should not be protected in enforcing the process against the property of the *something* called "The Pratt Bank," so long as he confines himself to the money or property in the actual use and possession of the bank, or those *then* acting as, and claiming to be, its officers; leaving the owner to his remedy, if any, against *his superiors.* Corporations have, at best, but an artificial existence. Under our general laws, the right to create them is so widely diffused that it is sometimes difficult for courts to tell where the true *legislative afflatus* has fallen. For a mere executive officer, it would seem quite enough that he finds all the ostensible signs of a corporation, coupled with the name given in his process.

But conceding that the defendant was bound to know that the Pratt Bank was not a corporation, but an individual bank, owned by the plaintiff, who had adopted that name for the convenience of his business as a banker, the question then arises, whether the plaintiff, *as a banker,* may not be assessed by *either name.* It is quite obvious that he should be assessed *as a banker,* for that portion of his property invested in the business of his bank. The statute of 1847 attaches to this property a different rule or principle of assessment than that applicable to his other personal estate. By section 4 of that act, *all individual bankers* are declared " *subject to taxation upon the full amount of capital paid in, which shall not be less than the amount of circulating notes, without any deduction for the debts of such individual banker."* (*Laws of* 1847, *p.* 52.) To carry out this principle, the assessors should, in some form, designate on their roll the sum assessed to the party *as an individual banker,* that it may appear to be within the act of 1847, and *not subject to reduction for the debts of the owner.* If the *individual banker* has adopted and published to the world a business name, as such banker, by which he describes and designates his banking business and office; in which he makes the reports required by law;

under which he issues his circulating notes and redeems them; by which, in short, he is universally known and recognized as a banker, why may not that name be used in assessing him as such banker, as well as his individual name, with an affix to designate his business? In the community in which the business is transacted, it is not difficult to imagine that the words "The Pratt Bank," as a designation, are more likely to be understood than "Thaddeus W. Patchin, banker," would be. It is a good answer to a plea of misnomer, that the party is as well known by one name as the other. (*Petrie* v. *Woodworth*, 3 *Caines*, 219. *The Methodist Church* v. *Tryon*, 1 *Denio*, 451.) The case of *Brown* v. *The Butchers and Drovers' Bank*, (6 *Hill*, 443,) is an apt illustration of the strictness with which courts will hold a party responsible for any mark or designation he may use as a substitute for his name. There Brown indorsed a bill of exchange in pencil mark with the figures "1, 2, 8." It appeared he could write, but as the evidence tended to show he meant the figures as a substitute for his name, the court held him liable as indorser. In *Rogers* v. *Coit and others,* (6 *Hill*, 322,) the court recognize the rule that the defendants might bind themselves by what name they pleased. The evidence in this case, which it is not necessary to recapitulate here, showed indisputably, that Thaddeus W. Patchin, as an individual banker, was known by the name of "The Pratt Bank," as well as, and it may be justly said, far better than by his own name. It is no answer to say that under the law he had no right, as a banker, to assume the name by which he is taxed, or any name but his own. If he has assumed it, he cannot escape the legal consequence of becoming known by it, by now denouncing his own usurpation. It is immaterial, therefore, to examine the question whether he might lawfully denominate his bank as he has done. In doing it he has enjoyed all the benefits it could confer, and among them, perhaps, the fictitious credit of being a "moneyed corporation," and he must not now be allowed to shrink from the duty of sharing the

Patchin *v.* Ritter.

burthen of the government under which "The Pratt Bank" has for years existed, upon the pretext that his assessment should have been *in his other name.*

For these reasons the court has arrived at the following conclusions :

1. That an individual banker, doing business under the general banking laws of this state, who assumes a special name by which his business as banker is characterized and known, may be assessed by that name, and the warrant for the collection of the tax, issued against such name, may be levied upon the money or property used in the business of such banker.

2. That the question whether such banker was taxable in the town or ward in which the assessment was made, cannot be raised to affect the validity of process, regular on its face, against the officer executing it ; nor—where the process is against an individual bank, by the name in which it does business, which name is apparently that of a corporation, and such bank has a place of business within the jurisdiction of the assessors and of the officer executing the process—can its owner be permitted, as against the officer levying on the money or property of the bank, to claim that it is not a lawful corporation, and not taxable by its apparently corporate name.

The judgment appealed from must therefore be reversed, and a new trial ordered, with costs to abide the event.

[ERIE GENERAL TERM, February 8, 1858.   *Davis, Marvin* and *Grover,* Justices.]