Johnson *v.* Learn.

---

## Johnson *vs.* Learn.

The revised statutes, in the provisions relative to the place where, and the persons to whom, property is to be assessed, as amended by chap. 176 of the laws of 1851, empower the assessors of a town to assess lands therein situated, occupied by a person other than the owner, (though owned by a non-resident,) to the owner or to the occupant, or as non-resident lands.

This leaves to the assessors a reasonable discretion, to be exercised with a view to the mode most likely to ensure the prompt and certain collection of the tax.

They have power to assess land to an owner, who is a non-resident, personally, provided it is "occupied by a person other than the owner;" and after they have adjudged land to be so occupied, and therefore assessable to the owner,

Johnson v. Learn.

this is a sufficient justification to the collector, even though the assessors may have misjudged; provided there is nothing in the warrant to show him that the land was not occupied by a person other than the owner.

If the assessors have, in form, sufficiently assessed a lot to a person as owner, personally, the court will assume, for the protection of the collector, that the circumstances necessary to give them jurisdiction to make the assessment, existed.

APPEAL from a judgment of the Cattaraugus county court, reversing the judgment of a justice of the peace. On the trial of the action, it appeared that the plaintiff was a resident of the town of Ellicottville, and was the owner of a certain farm known as lot No. 48, in the town of Humphrey in the same county; that one Baxter, who resided on a place adjoining lot 48, put in and harvested a crop of oats on that lot in 1856, and in the summer of 1857 cut and put into the barn the hay on the place, and during both seasons had charge of the lot, "to keep off cattle," &c., and that he was employed by the plaintiff to do these things; that there was a barn on the place, but no house; that in 1857 the assessors of the town of Humphrey assessed said lot 48 to the plaintiff, placing his name in a part of the assessment roll called "non-resident roll," the name of the plaintiff appearing therein in a column headed "names of owners non-resident," followed in other columns by the number, part, quantity and value of the lot, and the amount of the tax; that to the original roll the affidavit of the assessors was subjoined, and annexed thereto was a warrant regular in form, signed by the supervisors of said county; that the defendant was collector of taxes of said town of Humphrey, and the warrant, &c. having been duly delivered to him, he called on the plaintiff for his tax; that the plaintiff refused to pay, and thereupon the defendant levied on a quantity of hay belonging to the plaintiff on lot 48, and sold it by virtue of his warrant, for said tax. The justice gave judgment for the plaintiff, which the county court reversed, on the ground that the justice erred in a point not embraced in this statement. The plaintiff appealed to this court.

---

Johnson *v.* Learn.

---

*D. H. Bolles,* for the appellant.

*A. G. Rice,* for the respondent.

*By the Court,* DAVIS, J.   The defendant was collector of taxes of the town of Humphrey.   He seized and sold the plaintiff's property by virtue of a warrant issued to him by the supervisors of Cattaraugus county.   It is now settled by *Van Rensselaer* v. *Witbeck,* (3 *Seld.* 517,) that the warrant and assessment roll to which it is annexed, constitute one process, and a fatal defect appearing upon the face of either renders both void and the collector a trespasser ; but it is equally well settled that if the process be regular on its face, or " in due form," it fully protects the officer executing it, whether the tax was legally assessed or not.  · (*Chegaray* v. *Jenkins,* 1 *Seld.* 376.  *Savacool* v. *Boughton,* 5 *Wend.* 170.  *Patchin* v. *Ritter,* 27 *Barb.* 34.)   The real question upon this branch of the case, therefore, is not whether the plaintiff was *personally assessable* for his farm in Humphrey, but whether such facts appeared on the defendant's process as show that the assessors had no jurisdiction to assess him therefor.   The form and place in which his name is inserted in the roll are by no means controlling, or indeed important, on this question.   It may be said that the roll indicated to the collector that the plaintiff was a non-resident, but it at the same time showed that he was personally assessed for lot 48, *by name,* and that he was the person of whom the tax was to be collected under the direction of the warrant—to collect " *of the several persons named,*" &c.   His non-residence was not material if notwithstanding that he might be assessed upon the lot ; for the statute expressly provides for the collection of taxes of non-residents of the town " assessed upon any estate of such person situated out of the ward or town in which he shall reside." (1 *R. S.* 919, § 10, *5th ed.*)   So far therefore as the collector is concerned, it is only material to inquire whether the plaintiff, being a nonresident, might under any circumstance be assessed *in perso-*

*nam* for the lot in Humphrey. If he might, then we must assume, for the protection of the collector, that those circumstances existed, and that by reason of them the assessors had jurisdiction to make the assessment; because it is no part of his duty "to dispute the authority of his superiors, unless upon grounds apparent upon the face of their mandate. The law does not give him the means of ascertaining extrinsic facts for this purpose, nor does it attribute to him the capacity for reviewing the assessment on such facts, if they could be ascertained." (*Chegaray* v. *Jenkins*, 1 *Selden*, 376.)

The provisions of the revised statutes on the subject of the place where, and the person to whom, property is to be assessed, as amended by chapter 176 of the laws of 1851, so far as important to the question before us, are as follows:

"§ 1. Every person shall be assessed in the town or ward wherein he resides when the assessment is made, for all lands then owned by him within such town or ward and occupied by him or wholly unoccupied.

§ 2. Land occupied by a person other than the owner, may be assessed to *the owner or occupant, or as non-resident lands.*

§ 3. Unoccupied lands not owned by a person residing in a ward or town where the same are situated, shall be denominated lands of non-residents, and shall be assessed as hereinafter provided."

Before the amendment of 1851 the second section read as follows: "§ 2. Land owned by *a person residing in the town or ward where the same is situated, but occupied by another person,* may be assessed in the name of the owner or occupant."

The change in this section is significant and important, and seems fully to supply the *casus omissus* pointed out by Harris, J. in *Van Rensselaer* v. *Cottrell*, (7 *Barb.* 127.) In the *New York and Harlem Rail Road Co.* v. *Lyon*, (16 *Barb.* 651,) the court seem to have overlooked the amendment of .1851, and to have decided that case upon the statute as it stood prior to the amendment; or the force and effect of the change was misapprehended by the learned judge. To us it

is obvious that the statute as amended empowers the assessors of a town to assess lands therein situated, *occupied by a person other than the owner, (though owned by a non-resident,) to the owner or to the occupant, or as non-resident lands;* and that this was the purpose of the amendment, seems apparent on comparing the present with the former section, and observing the words stricken out and those added by the legislature. Formerly, the land "occupied by a person other than the owner," which might have been assessed to "the owner or occupant," was *only* "land *owned by a person residing in the town or ward where the same is situated;*" but by the amendment this limitation is wholly stricken out, and now all lands *occupied* by a person other than the owner may be assessed in either of three modes: to the owner, or to the occupant, or as non-resident lands. This leaves to the assessors a reasonable discretion in such cases, to be exercised with a view to the mode most likely to insure the prompt and certain collection of the tax.

The assessors of Humphrey, therefore, had power to assess lot 48 to the plaintiff, provided it was "land occupied by a person other than the owner." There is nothing in the defendant's process to show him that it was not so occupied. In form the assessors have sufficiently assessed the lot to the plaintiff *personally,* and having done that, *so far as the collector is concerned,* we have no farther inquiry to make. In adjudging the land to be occupied, and for that reason assessable to the plaintiff as owner, they may have wholly misjudged; but the collector has neither authority nor means to correct their error. It is enough for him that his process shows a tax assessed to the plaintiff as owner of a lot of land situate in Humphrey; and it is of no consequence that it also, shows the plaintiff to be a non-resident, because he must presume that *the fact* which would give the assessors jurisdiction to assess the land to the plaintiff, although a non-resident, also existed.

From these views it follows that the warrant and assess-

ment in this case were a protection to the defendant, and that the judgment of the county court should for that reason be affirmed.

ERIE GENERAL TERM, November 22, 1859. *Greene, Marvin* and *Davis,* Justices.]