Dewey *v.* Stratford.

## DEWEY *v.* STRATFORD.

Taxes upon the real estate of nonresidents, when not voluntarily paid, can only be collected by a sale of the land taxed, according to the provisions of the statute, such taxes being a charge upon the specific lands taxed, and not a personal charge against the nonresident owner.

The plaintiff had paid the taxes upon certain lands in Stratford for four years in succession, claiming to own them, which lands had, during said term, been taxed as nonresident. *Held,* that he might maintain his petition in court for the abatement of the last year's taxes, if properly brought in other respects, without other proof of title.

In assessing taxes upon unimproved lands, it is not absolutely necessary that the selectmen should find and actually go upon and examine each lot separately, every year; they may have sufficient knowledge of the lands from former examinations and other competent evidence, so that they may assess the taxes thereon without such actual examination.

In the absence of proof, it will be presumed that the selectmen had knowledge or competent evidence of the value of the lands taxed, when the assessment was made.

Upon a petition for the abatement of taxes upon certain lots of land which were alleged to be taxed too high, the defendants offered to prove that certain other lots, claimed by the plaintiff in the same town, which were not named in his petition, were taxed at less than their real value, in order to show that all the lands claimed by the plaintiff in the town, were not, when taken together, appraised at an amount above their real aggregate value. *Held,* that the evidence was inadmissible.

THIS was a petition for the abatement of taxes assessed for the year 1858. The plaintiff resides in Maidstone, county of Essex and state of Vermont, and in his petition he represents that he is the owner of the several lots and

parts of lots of land in Stratford, in the county of Coös, which are therein particularly described, by stating the name of the original proprietor, the division, number of the lot and number of acres, with the appraisal of the same in 1858, and the amount of taxes assessed upon each lot for that year. There were more than fifty lots and parts of lots thus described in the petition, containing in all about 7000 acres, and valued in said appraisal at about $7000, being an average of about $1 per acre. The petition showed that lots in the second division were generally appraised at $1.50 per acre, lots in the third and fourth division, at $1 per acre, and lots in the undivided lands, at 50 cents per acre. There were no lots in the first division, in said petition. These lots were all taxed as nonresident, and the petition set forth that they were appraised at more than twice their real value, and that proper application had been made to the selectmen of said town of Stratford to abate said taxes, &c. Upon the hearing, there was much evidence introduced upon both sides, as to the value of these lots of land, and as to the prices at which lands in that vicinity have been sold, with a description of their position, &c.

It appeared in evidence that said Dewey claimed to own about 12,000 acres of land in said Stratford, some being in the second division, some in the third and fourth divisions, and some in the undivided lands in said town ; that all these lots which were unimproved were taxed and valued the same as the other unimproved lands in town, whether owned by residents or nonresidents.

The defendants proved by their books that from the year 1808 to 1812, inclusive, the lands in Stratford, which were not improved, were appraised uniformly as follows : all second division lots, at $2 per acre ; all third, at $1 per acre ; all fourth, at fifty cents per acre ; and all undivided, at twenty-five cents per acre ; and that for the last twenty years or more, previous to 1857, all unimproved lands in

town had been appraised upon the same basis: viz., all second division lots, at $1 per acre ; all third and fourth, at fifty cents ; and all undivided, at twenty-five cents ; that in 1857 the selectmen raised the valuation of the unimproved lands in town, and that since that year the valuation has been the same every year: to wit, all second division lots, at $1.50 per acre ; all third and fourth, at $1 per acre ; and all undivided, at fifty cents per acre.

The plaintiff introduced evidence to show that, in some fifteen cases of the largest and best farms in Stratford, there was no rise in the valuation as fixed by the select-men, in the year 1857, nor since, nor immediately before, but that these farms were appraised substantially the same each year, from and including 1856 to the present time. It appeared that the selectmen appraised these unim-proved lots without going upon them to make any per-sonal examination of them, but that no different rule was applied, in relation to the plaintiff's lands, from that ap-plied to all other lands in town similarly situated.

The plaintiff introduced no evidence of title to the lots described in his petition, and there was no competent evidence to show to whom in fact these lots belonged. But it did appear that said Dewey had paid the taxes on said lots for some three years prior to the year 1858, and for that year, and claimed to own said lots.

The plaintiff asked the court to rule that an appraisal, made in that way by selectmen, without any personal ex-amination of the lands, was not such an appraisal as the law required, and that the taxes assessed upon such an appraisal were illegal and the assessment void, and that, therefore, the whole tax upon these lots should be abated, which the court declined to do, the plaintiff excepting.

The defendants offered to show that if it should be found that the appraisal was too high upon any particular lots contained in the plaintiff's petition, yet that, taking the other 5,000 acres which the plaintiff claimed to own

Dewey *v.* Stratford.

in said town, and upon which he had asked for no abatement, together with the 7,000 acres contained in the petition, the whole, as a body, was appraised at no more than a fair and just valuation, and asked the court to consider this testimony. But the court excluded it, the defendants excepting.

The court also ruled that inasmuch as the plaintiff had shown no title in himself to any of the lands enumerated in his petition, that he could not sustain his petition, and that the same must, therefore, be dismissed; to which ruling the plaintiff excepted. And the questions of law arising upon the case were assigned to the law term.

*Haywood*, for the plaintiff.

*Williams*, and *Johnson*, and *Burns & Fletcher*, for the town.

SARGENT, J. The Revised Statutes (ch. 45, sec. 10; Comp. Laws, 125) provide that " in case of removal from town, or of an assessment upon the personal property of nonresidents, the collector may distrain the property or arrest the body of any person named in his list, wherever such person or his property may be found."

The statute also provides (Rev. Stat., ch. 46, sec. 1; Comp. Laws, 127) that " a list of the taxes assessed on the real estate of persons not resident in the town shall be made by the selectmen, under their hands, in which shall be inserted the name of the owner, if known; otherwise the name of the original owner, if known, and the number of the lot and range, if lotted; otherwise, such description as the land may be readily known by, the number of acres, and the amount of taxes assessed thereon."

Provision is then made for furnishing the list of such taxes to the deputy secretary of state, for the advertising, selling, conveying and redeeming of such lands, but no where is any provision made that the collector may dis-

train upon any personal property, or arrest the body of the owner of such lands, when known, nor is there any authority given to the collector to sell any other real estate to pay such taxes than the identical lot upon which the taxes are assessed.

We conclude, therefore, that it was the intention of the legislature that taxes assessed upon the real estate of non-residents, should be a charge upon the lands taxed only, and not a personal charge against the owner; that when such tax is legally assessed upon such nonresident lands, a lien is thereby created upon such lands for the amount of such tax; and that such tax must be collected, if at all, in the way provided by law, by a sale of the property taxed, and each parcel or lot, or so much thereof as is necessary, must be sold to pay the taxes assessed upon that identical lot; and that such tax can not be collected of the owner in any other way, except by the sale of the real estate taxed, when such taxes are not voluntarily paid. Such has been held to be the law in Massachusetts. *Rising* v. *Granger*, 1 Mass. 47; and substantially the same in New-York; *New-York & Harlem Railroad* v. *Lyon*, 16 Barb. 651.

The provision in our statute that the name of the owner, if known, shall be inserted, is only to render the description of the land more perfect, as no different rule of proceeding is laid down for collecting the tax in such case from that to be applied in case the owner is unknown. The description of the land, with the name of the owner, if known, and if not, the name of the original owner or proprietor, is inserted for the purpose of enabling the owner to identify his land, and pay the taxes upon his own and that only, should he desire to pay them, and thus prevent a sale of the land.

The first question raised is, Has the plaintiff the right to sustain his petition in court, without further evidence of title to the lands; and we think he has. This is not like

Dewey v. Stratford.

a writ of entry or an action of trespass *quare clausum*, where title or possession, or both, must be shown in the plaintiff, before he can maintain his suit. He has paid certain taxes upon lands taxed as nonresident, paying them, as may be fairly presumed, to prevent their being sold for the taxes thus assessed upon them. A man who had no title to the lands, but wished to acquire one, would let the lands be sold, and in that way acquire a title by purchase, if possible. We can hardly see what motive a man would have, to pay taxes on these lands, who had no title to them. We can conceive that there might be cases of disputed title, where two men might claim the same land, and each might be desirous of paying the taxes. But the town, in such cases, would not stop to investigate the title — would make no question about it — but would receive the taxes of the man who might first offer to pay. And, we think, the man who claims to own the land, and who has paid the taxes upon it for five years in succession, when there is no evidence tending to show that any body else claims it, or has ever offered to pay taxes upon it, is entitled to ask the town to abate some portion of these taxes, if he thinks them to be too high; and if the selectmen refuse to abate, he may petition the court, according to the provisions of the statute, and stands in a position to be heard.

Especially ought this to be so, since the money must be paid, to prevent costs and the loss of his land; for the town will not wait, before he pays his taxes, till he can have his title to the land settled. He is obliged to pay or lose his land, and having asked an abatement of the town, which was denied, there is no alternative but for him to pay the tax as it was assessed; and the only question now seems to be whether the town have been overpaid — whether, in fact, they hold money, which, in equity and good conscience, belongs to the petitioner, after deducting what should justly be assessed and paid upon the

lands; and although we find no authority directly upon this subject, yet we think that the petitioner may consider himself aggrieved, if he has thus been obliged to pay, in order to prevent a sale of lands claimed as belonging to him, a sum larger than his just proportion of the taxes of the town; and the statute authorizes " any person, conceiving himself aggrieved," to petition the court, in such cases, after he has taken the proper preliminary steps. Rev. Stat., ch. 44, sec. 2; Comp. Laws, 123. We hold, therefore, that the ruling of the court below, on this point, was incorrect.

The other ruling, that the taxes for the year 1858 may have been legally assessed upon these unimproved lands, by the selectmen, without their going upon the lands to make a personal examination of them, was, we think, correct.

In many of our towns, selectmen might hardly find sufficient time, in the month of April, to make their inventories, if they were obliged to find and make a personal examination of every wild lot of land in town. They might, also, have other evidence that would be satisfactory. They may have examined the same land the year before, or at some former time, and not need to reëxamine it. Ordinarily, the description of the land by its lot and range, would designate its location upon the plan and upon the ground, and would indicate its real value as correctly as any other evidence, where it was without any improvements, to the minds of those well acquainted with all the different localities of the town, and conversant with the general value of property in the different portions of it.

It may always be presumed that the selectmen had competent and sufficient evidence upon which to make their invoice, and assess their taxes, until the contrary is made to appear; and it will not be sufficient, merely, to

show that in a given year the selectmen did not actually go upon and examine the land taxed.

The remaining question, as to whether the court might consider the quantity and value of the other five thousand acres of land in the town of Stratford, claimed by the plaintiff, and upon which he has paid the taxes, and asks for no abatement, in connection with the land described in the petition, in order to determine whether any abatement should be made, seems at first to be attended with more difficulty. It has a look apparently equitable, that such an offset should be allowed; but it can not be that, in case of personal property, where the selectmen make their appraisal from actual inspection of the property, and have all the means they can desire for making a correct appraisal, any such rule or principle could be introduced. The selectmen could not and should not be allowed to claim to offset one error of judgment against another error of the same amount, but upon the opposite side.

Nor would it seem that any such rule should be applied in case of improved lands, which are easily inspected and examined by the selectmen, and concerning the income and value of which they might readily gain all the information they could need or desire to enable them to arrive at a correct conclusion; because, if a different rule should be applied, it would encourage selectmen in a course of inattention and carelessness for which there could be no good cause, and should be no excuse or apology. And we think that the ruling of the court below, upon this point, was correct, upon the whole, and that, in case of unimproved lands, the same principle must be applied as in case of other property.

The statute (Rev. Stat., ch. 42, sec. 1; Comp. Laws 120) provides that "the selectmen shall appraise all taxable property at its full and true value in money, and shall receive and consider all such evidence as may be exhibited

to them relative to the value of shares in corporations and other property, the value of which can not be determined by personal examination." Section 3 provides that the different kinds of property shall be appraised separately, and the value thereof placed in separate columns in the invoice; and selectmen may not only receive such evidence as is presented to them, but they may seek and receive information from any proper source, so as to satisfy themselves fully upon any given point. And we have before held that it is to be presumed that the selectmen have competent evidence upon which they make their invoice in all cases, and we have seen that they have the means of obtaining sufficient evidence in all cases. If, therefore, selectmen fail to receive the necessary evidence to enable them to make a correct invoice of unimproved lands, it is their own fault, and they are entitled to no favor on that account.

The law holds the town responsible for the integrity and competency of the selectmen in the discharge of their duties; and, if they, through fraud or folly, should appraise half the property in their town at one half its value only, the law provides no way by which the court may revise those proceedings, and make a new invoice and assessment of taxes, and thus compel individuals to pay more than was assessed upon them; but it has only provided for the abatement of taxes when they are too high; and we conclude that the court should be limited in their investigations to the property specified in the petition, and should abate the tax or otherwise, as they shall find is right on considering the evidence relating to the value of that property only.

We have gone a step farther here, and considered the evidence in the case, and we find no sufficient reason existing for the change of valuation in 1857; but we are of the opinion that the valuation for twenty years prior to that was as high as the lands were actually worth, and

Dewey *v.* Stratford.

probably much higher than they would sell for in any considerable quantities, for cash, at a forced sale, or, in fact, in any other way. There should, therefore, be an abatement of the taxes made upon that basis : to wit, all second division lots should be appraised by the acre at one dollar, instead of one dollar and fifty cents ; all third and fourth division lots should be appraised by the acre at fifty cents, instead of one dollar ; all undivided lots should be appraised by the acre at twenty-five cents, instead of fifty cents. And when this court, at its trial term, has made the computation upon the above basis, let an order be made for the abatement of so much of the taxes assessed upon the lands described in the plaintiff's petition as will correspond with this change in the invoice.