The legislature, in defining property which is liable to taxation, have used the following language: "All lands and all personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation subject to the exemptions hereinafter specified." (1 R.S., 387, § 1.) The title of the act in which this provision is contained, is, "of the property liable to taxation," and it is in this title that we ought to look for controlling definitions on the subject. Other enactments relate to the details of the system of taxation, to the mode of imposing and collecting the public burdens, and not to the property or subject upon which it is imposed. In order, therefore, to determine the question now before us, the primary requisite is to interpret justly and fairly the language above quoted.
"All lands and all personal estate within this State shall be liable to taxation." If we are willing to take this language, *Page 226 
without attempting to obscure it by introducing a legal fiction as to the situs of personal estate, its meaning would seem to be plain. Lands and personal property having an actual situation within the State are taxable, and by a necessary implication no other property can be taxed. I know not in what language more appropriate or exact, the idea could have been expressed. Real and personal estate are included in precisely the same form of expression. Both are mentioned as being within the State. It is conceded that lands lying in another State or country, cannot be taxed against the owner resident here, and no one ever supposed the contrary. Yet it is claimed that goods and chattels situated in Louisiana, or in France, can be so taxed. The legislature I suppose could make this distinction, but that they have not made it, in the language of the statute is perfectly clear. Nor is the reason apparent why such a distinction should be made. Lands have an actual situs, which of course is immovable. Chattels also have an actual situs, although they can be moved from one place to another. Both are equally protected by the laws of the State or sovereignty in which they are situated, and both are chargeable there with public burdens, according to all just principles of taxation. A purely poll tax has no respect to property. We have no such tax. With us taxation is upon property, and so it is in all the States of the Union. So also in general, it is in all countries. The logical result is, that the tax is incurred within the jurisdiction and under the laws of the country where it is situated. If we say that taxation is on the person in respect to the property, we are still without a reason for assessing the owner resident here, in respect to one part of his estate situated elsewhere, and not in respect to another part. Both, I repeat, are the subjects of taxation in the foreign jurisdiction. If then the owner ought to be subjected to a double burden as to one, why not as to the other also?
I find then no room for interpretation, if we take the words of the statute in their plain ordinary sense. The legislative definition of taxable property, refers in that sense to the actual situs of personal not less than real estate. If the intention *Page 227 
had been different, it cannot be doubted that different language would have been used. It would have been so easy and so natural to have declared that all lands within this State, and all personal property wherever situated, owned by residents of this State, shall be liable to taxation, that we should have expected just such a declaration, if such had been the meaning of the law-making power. To me, it is evident that the legislature were not enunciating a legal fiction which, as we shall presently see, expresses a rule of law in some circumstances and relations, but which in others is not the law. They were speaking in plain words, and to the plain understanding of men in general. When they said all real and all personal estate within this State, I see no room for a serious doubt that they intended property actually within the State wherever the owner might reside.
It is said, however, that personal estate by a fiction of law has no situs away from the person or residence of the owner, and is always deemed to be present with him at the place of his domicil. The right to tax the relator's property situated in New Orleans and New Jersey, rests upon the universal application of this legal fiction; and it is accordingly insisted upon as an absolute rule or principle of law which, to all intents and purposes, transfers the property from the foreign to the domestic jurisdiction, and thus subjects it to taxation under our laws. Let us observe to what results such a theory will lead us. The necessary consequence is, that goods and chattels actually within this State are not here in any legal sense, or for any legal purpose, if the owner resides abroad. They cannot be taxed here, because they are with the owner who is a citizen or subject of some foreign State. On the same ground, if we are to have harmonious rules of law, we ought to relinquish the administration of the effects of a person resident and dying abroad, although the claims of domestic creditors may require such administration. So, in the case of the bankruptcy of such a person, we should at once send abroad his effects, and cannot consistently retain them to satisfy the claims of our own citizens. Again, we ought not to have laws for attaching the personal *Page 228 
estate of non-residents, because such laws necessarily assume that it has a situs entirely distinct from the owner's domicil. Yet we do in certain cases, administer upon goods and chattels of a foreign decedent; we refuse to give up the effects of a bankrupt until creditors here are paid; and we have laws of attachment against the effects of non-resident debtors. These, and other illustrations which might be mentioned, demonstrate that the fiction or maxim mobilia personam sequuntur is by no means of universal application. Like other fictions, it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances the truth and not the fiction affords, as it plainly ought to afford, the rule of action. The proper use of legal fictions is to prevent injustice, according to the maxim, in fictione juris semper æquitas existat. "No fiction," says Blackstone, "shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience, which might result from the general rule of law." So Judge STORY, referring to the situs of goods and chattels, observes: "The general doctrine is not controverted, that although movables are for many purposes to be deemed to have nositus, except that of the domicil of the owner, yet this being but a legal fiction it yields whenever it is necessary, for the purpose of justice, that the actual situs of the thing should be examined." He adds quite pertinently, I think, to the present question, "a nation within whose territory any personal property is actually situated, has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there." (Confl. of Laws, § 550.) I can think of no more just and appropriate exercise of the sovereignty of a State or nation over property, situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law.
Accordingly there seems to be no place for the fiction of which we are speaking, in a well adjusted system of taxation. In such a system a fundamental requisite is that it be harmonious. But harmony does not exist unless the taxing power is exerted with reference exclusively either to the situs of the *Page 229 
property, or to the residence of the owner. Both rules cannot obtain unless we impute inconsistency to the law, and oppression to the taxing power. Whichever of these rules is the true one, whichever we find to be founded in justice and in the reason of the thing, it necessarily excludes the other; because we ought to suppose, indeed we are bound to assume, that other States and Governments have adopted the same rule. If then proceeding on the true principles of taxation, we subject to its burdens all goods and chattels actually within our jurisdiction, without regard to the owner's domicil, it must be understood that the same rule prevails everywhere. If we also proceed on the opposite rule, and impose the tax on account of the domicil, without regard to the actual situs, while the same property is taxed in another sovereignty by reason of its situs there, we necessarily subject the citizen to a double burden of taxation. For this no sound reason can be given. To put a strong case. The owner of a southern plantation with his thousand slaves upon it, may prefer to reside and spend his income in New York. Our laws protect him in his person as a citizen of the State, and for this the State receives a sufficient consideration without taxing the capital which it does not protect. Under our laws can we tax the wealth thus invested in slave property? They ignore, on the contrary, the very existence of such property, and therefore there is no room for the fiction according to which, and only according to which, the situs is supposed to be here. But if we could make room for that fiction, still it remains to be shown that some rule of reason or principle of equity can be urged in favor of such taxation. This cannot be shown, and the attempt has not been made.
We may reverse the illustration. A citizen and resident of Massachusetts may own a farm in one of the counties of this State, and large wealth belonging to him may be invested in cattle, in sheep or horses which graze the fields, and are visible to the eyes of the taxing power. Now these goods and chattels have an actual situs, as distinctly so as the farm itself. Putting the inquiry then with reference to both, are they "real estate and personal estate within this State," so as to be subject to *Page 230 
taxation under that definition? It seems to me but one answer can be given this question, and that answer must be according to the actual truth of the case. If we take the fiction instead of the truth, then the situs of these chattels is in Massachusetts, and they are not within this State. The statute means one thing or the other. It cannot have double and inconsistent interpretations. And as this is impossible so we cannot, under and according to the statute, tax the citizen of Massachusetts in respect to his chattels here, and at the same time tax the citizen of New York in respect to his chattels having an actualsitus there. In both cases the property must be "within this State," or there is no right to tax it at all. It cannot be true in fact, if a Massachusetts man owns two spans of horses, one of which draws his carriage at home and the other is kept on his farm here, that both are within the State. It cannot be true by any legal intendment, because the same intendment which locates one of them here, must locate the other abroad and beyond the taxing power. It seems to follow then inevitably that before we can uphold the tax which has been imposed upon the relator's property situated in New Orleans and New Jersey, we must first determine, that if he resided there, and the same goods and chattels were located here, they could not be taxed as being within the State. Such a determination I am satisfied would contravene the plain letter of the statute as well as all sound principles underlying the subject.
We have been referred to other provisions of the code of taxation as contained in the Revised Statutes. In the article "of the place in which property is to be taxed," it is declared that "every person shall be assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him, including all such personal estate in his possession or under his control, as master, guardian, executor or administrator; and in no case shall property so held under either of those trusts, be assessed against any other person." (§ 5, p. 389.) This provision, it is supposed, has some tendency to sustain the action of the Commissioners of Taxes in the present case. But I think otherwise. The object of the title *Page 231 
and of this section in particular, is to specify the town or ward where the property of each taxpayer is to be assessed, and not to define the subjects of taxation. In regard to subjects, therefore, exactness of expression in such a connection, was not important. All property liable to taxation, and all property exempt therefrom, had been specified with great precision in the preceding article, and the definitions of that article must therefore be understood as qualifying all loose and general expressions in the provisions which follow it, devoted to other details of assessment and taxation. In construing the section last quoted, we shall be materially aided if we refer to those which immediately precede it in the same article concerning the assessment of lands. Lands occupied by the owner or wholly unoccupied, and situated in the ward where he resides, must be assessed to such owner. (§ 1.) Lands unoccupied and not owned by a person residing in the town or ward where they are situated, are to be assessed as non-resident lands. (§ 3.) Thus if a person resides in one town, and owns lands in another town or county within the State, those lands are called "non-resident," and are assessed accordingly. But personal estate is reached in a different manner. It is never treated as "non-resident" estate. The owner may reside in one part of the State and his goods and chattels be situated in another part. In such case they are assessed to him, and not as non-resident, unless in the possession or control of a trustee, guardian, c., at the place of their actual location, and in that case they must be assessed to such trustee, guardian, c. Thus we find that in assessing residents in respect to their lands, the same must be situated in the town or ward where they reside. But in respect to personal estate, it may have a situs anywhere in the State, and the owner is to be taxed for it in the town or ward where he is a resident. It is this difference which led to greater generality of expression in the 5th section. But this generality, thus introduced, ought not to be received as enlarging the sphere of taxation in opposition to a clear and precise definition in the article on that subject. Indeed, if we are to take expressions of a loose and general nature, we shall find *Page 232 
nothing against taxing lands situated without the State, except the primary definition referred to, which necessarily qualifies all such expressions.
But a still closer attention to this 5th section, will not be unprofitable. Personal estate owned by the taxpayer and that possessed or controlled by him as trustee, guardian, c., are placed in the same category; and in regard to the latter it is declared that property so held shall not be assessed against any other person. Now it may well be true, and no doubt is often true, that a person domiciled in this State is trustee, guardian or administrator in respect to property situated in some other State, according to the laws of which the trust will be controlled or the property administered. It is pertinent to inquire whether the legislature intended to tax property thus situated. It "shall not be assessed against any other person." This prohibition would be impossible and absurd, in the case supposed of chattels having a situs in another jurisdiction. Yet the prohibition relates to the very thing which is the subject of the assessment. And from this I think it a very just inference that the legislature in enacting the section had in view only personal estate within this State; in other words, the property which they had previously declared to be liable to taxation. Again, I have observed that personal property is not in any case taxed as "non-resident" estate. But it does not follow that such property may not be assessed here, although the true owner resides elsewhere. The possession of chattels is never vacant, as may be the case in respect to lands. Where it is not in the hands of the owner it is usually held by some one else under some agency or trust, and the statutes which have been referred to are comprehensive enough to reach it in most cases when actually situated here, notwithstanding the foreign domicil of the general owner. All personal estate within the State is liable to taxation. It may be within the State in the possession or under the control of a trustee, while the beneficial owner is a resident abroad, and in such a case the assessment is to be against the person having the special interest or control. The actual situs and control of the property within the *Page 233 
State is the condition which subjects it to taxation. The owner will of course be assessed if he resides here and has it under his own control. If he resides in another State, the result is reached by charging his agent or trustee in the actual possession. And thus the different provisions of law which have been mentioned, appear to me to be in harmony with each other.
We have referred so far to the Revised Statutes of 1830, in which the tax laws underwent a careful revision. But the course of legislation before and since that time should also be considered. As to antecedent laws from 1801 to 1830, it is sufficient to observe, in general terms, that they contained no explicit declaration on the question now before us. In all these acts general words were used, requiring the assessors to set down in the tax roll, against the names of every resident of the towns and wards within the State, the value of his personal estate without any specification of the situs. (2 R.L., 509.) Such general language might or might not be held to include the property of residents situated in foreign jurisdictions. In the revision of 1830, we find, for the first time, the precise definitions on this subject, which have been mentioned; and I have no doubt they were framed with a distinct and intelligent purpose.
But we find acts of a later date which throw much additional light upon the legislative intention. In 1851, the above mentioned 5th section of the article relating to the place of taxation was amended. (Stat., ch. 176, p. 332.) By this amendment, the word "agent" is inserted before the words trustee, guardian, c., and an addition is made to the section which provides, first, for the case of a residence of a person in two or more towns or wards during any year for which taxes are to be levied. The amendment then declares, that the products of any State of the United States consigned to agents in any town or ward of this State, for sale on commission for the benefit of the owner thereof, shall not be assessed to such agent, nor shall agents of moneyed corporations or capitalists be liable to taxation under this section for any moneys in their possession or under their control, transmitted to them for the purpose *Page 234 
of investment or otherwise. This amendment is quite material to the present question, because it clearly shows that an actualsitus within the State is the criterion of taxation. It shows this because it specially exempts the property of citizens of other States having such a situs here under peculiar circumstances and conditions. If sent for sale on commission, or if it be the money of a corporation or capitalist sent here to be invested, for example, on bond and mortgage, it is not to be assessed. By irresistible inference, which no one will question, an actual situation here, under all other circumstances, will subject personal estate to taxation, in whatever State or country the owner may have his domicil.
One other act of a still later date remains to be noticed. In 1855, a statute was passed declaring that "all persons and associations doing business in the State of New York as merchants, bankers or otherwise, as principals or partners, whether special or otherwise, and not residents of this State, shall be assessed on all sums invested in any manner in said business, the same as if they were residents of this State, and said taxes shall be collected from the property of the firms, persons or associations, to which they severally belong." (Stat., 1855, ch. 37, p. 44.) It is well known that in many instances persons having their mercantile or banking establishments in the city of New York, reside in the vicinity beyond the lines of the State, and until this act was passed such cases were apparently not within the reach of taxation. There was no authority for inserting in the tax rolls any name but that of the owner of personal estate, resident in the town or ward where the assessment was to be made; including however in the term owner, agents and trustees having the possession or control of the property, whether the true owner resided within or without this State. If, therefore, the owner resided across the line, in New Jersey, but yet controlled and managed his own business in the city of New York, there was no mode provided for taxing his assets there situated. He could not be personally assessed because he was not an inhabitant of the town or ward, and inasmuch as his property was not in the possession *Page 235 
or control of any agent or trustee, it could not be reached at all. This was a very considerable mischief, and this statute was passed to remedy it. It accomplished the object by authorizing an assessment by name of the non-resident owner in respect to property thus situated; and undoubtedly large values are thus reached by the taxing power not embraced in the phraseology of the prëexisting enactments. Now this act is referred to in the decision of the court below in the present case, as introducing for the first time the principle of taxing personal estate by reason of its actual situs here, when the owner resides abroad. I think it is now plain that this is far from being the case. That principle is inherent in the very nature of the subject, and it pervades all legislation from 1830 to the present time. This act was passed not to change the fundamental basis of assessment, but simply to remedy an imperfection in one of its details by reason of which the system rendered an incomplete result. In short, the system was perfected instead of being inaugurated by this statute.
Let us now take in, at a single view, all the legislation of the State which constitutes the existing code on this subject. We have, in the first place, the fundamental definition which is the basis of all taxation, describing the subject as "all real and all personal estate within this State." The same revisers and legislators who thus defined the basis, prescribed the mode of assessment. Every owner of personal estate was to be assessed in the town or ward where he resided, but this alone would not embrace the case of a non-resident, whose property was within the State. But there is no such thing as a vacant possession of personal estate. Therefore, the term owner was made to include trustees, guardians, c., and they were to be assessed for property in their possession or under their control, whoever and wherever the beneficial owner might be. In that mode, the estates of non-residents having a situs here were reached. But it was at least doubtful whether the terms trustee, guardian, c., were sufficiently descriptive to include property of non-residents situated here, under all conditions which ought to subject it to taxation. The more comprehensive *Page 236 
word "agent," therefore, was added in 1851; but in order that this word might not carry the principle to results unjust and inexpedient, the legislature with becoming caution made at the same time a special exception in favor of property and money sent here from other States for sale or investment. The very language of the exception was an unmistakable assertion of the principle. Then in 1855, a serious defect in the system had been developed. Non-residents of the State were found to be personally, either as principals or partners, in the possession and management of large capitals or estates within the State. They could not be assessed, as the laws were, and there was no agent or trustee to assess in respect to property thus situated. The system was accordingly improved and extended so as to embrace such cases.
Thus we have a system apparently symmetrical and complete, according to which all personal estate having an actual situs
in this State is brought within the sphere of taxation without regard to the domicil of the owner, with only special exceptions dictated by policy and justice. And if this be the rule of taxation where the situs of the thing to be taxed, and the domicil of the owner are different, it is conceded that the opposite rule cannot and does not prevail. Proceeding on this rule, Louisiana and New Jersey very justly imposed a share of their public burdens on the property of the relator situated in those States. The State of New York will do the same thing in respect to citizens of those States having property here, but it is not so unjust to its own citizens as to load them with double burdens by proceeding on the opposite principle also. I am confident there is nothing in all our legislation which affords any ground for imputing to it such inconsistency and injustice.
I have not arrrived at these views, without examining the case of Wilson v. The Mayor, c., of New York, decided in the Common Pleas of that city in December, 1855. (4 E.D. Smith, 675.) In that case Mr. Justice WOODRUFF showed very satisfactorily, that, according to all principles which ought to govern taxation, personal as well as real estate should be assessed in the place of its actual situation, and not otherwise, and by the same *Page 237 
reasoning he thought the property of residents situated abroad ought to be exempted. Nevertheless, he came to the conclusion that the rule was in fact otherwise in both respects. He very properly conceded that the laws of taxation were consistent, resting wholly on one basis or the other, and in no case provided for a double assessment. But adopting in its fullest extent and for all uses the fiction that personal estate has no situs away from the owner's domicil, he interpreted the words "within the State," in the light of that fiction; and on that basis derived the double conclusion, that the property of a non-resident could in no case be taxed, while that of a resident is never exempt in whatever part of the world it may be situated. I need not repeat that I am constrained to think differently in both respects. Nothing on this point was determined in that case, because the decision was against the non-resident taxpayer on another ground. In the case now before us the only authority relied upon or cited in the opinion of the court below, is the case of The New Yorkand New Haven Railroad Company v. Lyon (16 Barb., 651). I have also examined that decision, and find that it contains not even an allusion to any such question. The assessment in that case was upon land, and the questions involved were of a totally different kind.
I conclude the discussion of this question by a brief reference to the course of decision in other courts of this country. In the case of The City of New Albany v. Meekin (3 Ind. R., 481), the charter of the town conferred the right of taxing all real and all personal estate within the city. The defendant was a resident of the city, and was assessed in respect to a steam-boat enrolled at Louisville, and which touched only occasionally at New Albany. The action was debt, to recover the amount of the assessment. But it was held that the tax was illegal, and that no recovery could be had. The Supreme Court observed, "the only question we have to consider is, whether the boat, or the defendant's share, is within the city." The same point arose upon a grant of the right of taxation, in the same words, in the case of Wilkey v. The City of Pekin (19 Ill. R., 160), and the question was determined in the same way. The *Page 238 
court said, "as a general rule personal property follows the person of the owner, but municipal corporations have no power to protect property not within their corporate limits, nor can they render any equivalent for the right of taxing such property, and there is no propriety in the application of this rule to them for the purposes of revenue. It is evident," the court added, "that the legislature intended to confine the power of taxation to property actually within the territorial jurisdiction." InJohnson v. The City of Lexington (14 B. Munroe, 648), the city government under its charter had authority to make a list of its taxable inhabitants, and to assess against them their real estate within the city, and also the just and true value of such personal estate as the Mayor, c., should designate. The Court of Appeals of Kentucky held that this power extended only to personal estate within the city, and that the property referred to was such as had an actual situs, and not merely such as had a legal or constructive status within the city, and which, they observed, is regarded only "for some purposes as being with its owner where he is domiciled." In Finley v. The City ofPhiladelphia (32 Penn., 381), the plaintiff was a surgeon in the United States army, stationed and keeping house in that city, but without any domiciliary intention. He was assessed in respect to his household furniture, and claimed to be exempt in consequence of his non-residence and occupation. But the Supreme Court decided otherwise; Chief Justice LOWRIE observing, "there is nothing poetical about tax laws. Wherever they find property, they claim a contribution for its protection without any special respect to the owner or his occupation." In Catlin v. Hull
(21 Verm., 152), a person residing in New York owned personal estate, consisting of notes and other obligations of debtors who were residents of the State of Vermont. These he had deposited with the plaintiff, residing in the town of Orwell in that State, as his agent, for management, collection and investment, and the plaintiff being such agent was assessed in that capacity for the estate thus in his hands. His own property being seized on the warrant for the collection of the tax, he brought trespass for such seizure, and the only question *Page 239 
was, whether the property of the non-resident owner was subject to taxation in that town. The statute of that State, very much like ours, provided that personal estate held in trust by an executor, administrator, agent or trustee, should be assessed to such executor, c. Among the propositions argued on behalf of the plaintiff it was insisted that personal estate, and especially debts due, having no fixed situs, follow the person and are to be considered as situate where his domicil is, and hence that the property in question could not be taxed, because the owner was domiciled out of the State. If such was the intention of the legislature, it was denied that they had the power of taxation in such a case. This argument was carefully considered, and was rejected by the Supreme Court of that State. After referring to and recognizing the fiction insisted on, it was observed by the court: "But this rule is merely a legal fiction, adopted from considerations of general convenience and policy for the benefit of commerce, and to enable persons to dispose of property at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country where the same is situated. But this doctrine," it was added, "in relation to the situs of personal chattels, and their transfer and distribution, we do not consider as at all conflicting with the actual jurisdiction of the State where it is situate, over it, or with the right to subject it, in common with the other property of the State, to share in the burden of government by taxation." And it was further observed, "we are not only satisfied that this method of taxation is well founded in principle and upon authority, but we think it entirely just and equitable, that if persons residing abroad bring their property and invest it in this State for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefit and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government which thus protects it."
The cases which I have referred to were determined by the highest courts in five States of the Union. They appear to be *Page 240 
entirely pertinent to the question now before us, and I am not aware of a single decision to the contrary, except the one under review. These cases not only establish a construction of statutes framed like our own, but they all assert the principles of taxation, which lie at the very foundation of the subject. (See, also, Story's Confl. of Laws, pp. 19, 462.) My conclusion, therefore, derived from the statutes, from these authorities and from the reasons of a general nature which ought to influence the decision of such a question, is that the relator was not subject to taxation for his personal estate, having an actual situation in New Jersey and Louisiana. This conclusion is intended to embrace only property which is visible and tangible, so as to be capable of a situs away from the owner or his domicil; and I do not consider the question in reference to personal estate of a different description. It must be within this State in order to be subject to taxation, for so is the statute; but that may be true of choses in action, and obligations for the payment of money due to a creditor resident here, from a debtor whose domicil is in another State. If the securities are separated from the person and domicil of the owner, and are actually in the hands of an agent in another State for collection, investment and reinvestment there, it may be that capital thus situated should be regarded as foreign and not domestic, in the absence of any special statutory provision intended for such a case. Questions of this character need not now be determined. It may be proper to add in respect to chattels which are in transit through the State, that they ought not to be considered as having a situs
here, so as to be subject to taxation. On the other hand, I have no doubt that ships at sea registered at a port within this State and consequently having no situs elsewhere, are justly taxable to the resident owner.
A subordinate question remains to be briefly noticed. It appears from the return of the commissioners of taxes to thecertiorari in this case, that they gave notice to the relator of the assessment against him pursuant to the statute (Laws of 1859, p. 678), that he appeared before them, and claimed *Page 241 
that such assessment be stricken from the roll, the sum at which he was rated being $4,000. On that occasion he made a statement showing that he had personal estate elsewhere than in this State of the value of $4,000 over and above all his debts and liabilities; whereupon the commissioners terminated his examination and declined to correct the tax roll. They requested, however, that his statement should be furnished in writing. It was furnished accordingly; and it showed that he had no personal estate within the State of New York over and above his just debts and liabilities, but it admitted that he had capital employed in his business in New Orleans, which was taxed and taxable there, and farm stock and household furniture in New Jersey, which was taxable there. Thereupon, the commissioners found that the relator was a resident of New York, that he owned personal estate of the value of $4,000; and they determined, as matter of law, that under the act of 1851 (already mentioned), "he was liable to be assessed for all personal estate owned by him, wherever the subject of the same might be, and that personal property has nositus, but follows the person."
Such being the action of the tax commissioners, I am of opinion that we are not at liberty to criticise the form or substance of the relator's statement before them. Under the statute (Laws of 1859, p. 681, § 10) they were clothed with the most ample powers to examine him in their own way upon oath, and they might, if they pleased to do so, inquire as to any facts bearing upon the merits of his application. But as soon as he admitted that he had personal estate situated out of the State of New York, they terminated the examination and flatly refused to give him the relief he demanded. This was followed by a more formal adjudication that his property situated in other States was subject to taxation, on the ground that in law it had no situs
away from his person and domicil in New York. This treatment of the subject was a full concession on their part, that if they were wrong in the law, the assessment could not be sustained. They declined a further examination of the facts, and deliberately decided the legal question. Of this *Page 242 
determination they made a record, and sent it up for review in return to the certiorari. It would be trifling with a grave and important question if we should hold that it did not arise upon such a record. The relator's statement certainly did not show that his debts were not also owing to persons in the foreign jurisdictions where his property was located. But the commissioners refused to inquire as to any such fact, and determined the whole question against him at the threshold of the examination. I am not prepared to admit that the fact would be at all material, and I incline to think otherwise. Both parties appear moreover to desire that the main question be decided, and I think we cannot escape it.
The judgment of the Supreme Court should be reversed, and judgment must be rendered that the assessment roll be corrected by striking therefrom the assessment against the relator.
SELDEN, LOTT, JAMES and DAVIES, Js., concurring,
Ordered accordingly.