People ex rel. Pacific Mail Steamship Co. v. Com. of Taxes, etc., of N. Y.

the general character of the prosecutrix for chastity may be shown, insisting, and I think, with great force, that particular acts of illicit intercourse are more direct and conclusive than the other evidence. "It is absolutely necessary," said J. B. STRONG, J., in 3 Parker, *supra*, "to the constitution of the offense, that the outraged female should have resisted to the extent of her power until the crime was consummated, unless such resistance was prevented by threats and intimidation," and yet it appears as the result of his examination of the cases and the conclusion is justified, that particular acts of lewdness cannot be given in evidence. I think the rule unjust. Although in the case in which the woman prosecutes it may be that she did not consent, nevertheless, it seems to me, that evidence of promiscuous intercourse by her bears directly upon the question whether she would resist to the extent of her power the advances of a person with whom she had been in social intercourse, and of whose liquor she had partaken until under its influence, if not intoxicated. I reluctantly yield to the conclusion, that on the authorities, these cases form no exception to the general rule. It is the more to be regretted from the fact, that if the prosecutrix be not asked the question of improper intimacy with others, or, being asked, declines to answer, which she has the right to do, the prisoner cannot at all introduce the evidence to show it, unless it be in the form of assailing her general character for chastity.

It is not difficult to imagine a case in which a woman would permit liberties to be taken with her by several persons, and yet not be in general reputation other than strictly virtuous.

The judgment must, for these reasons, be affirmed.

FANCHER, J., concurred.

*Judgment affirmed.*

---

PEOPLE *ex rel.* PACIFIC MAIL STEAMSHIP COMPANY v. COMMISSIONERS OF TAXES, ETC., OF NEW YORK.

*Taxation — corporate property located out of State — Laws 1857, chap. 456.*

A portion of the personal property of a steamship company, incorporated under the laws of New York, was permanently located in the business of the company beyond the limits of this State. *Held*, that such property was, under the statute, exempt from taxation here.

The provision of chap. 456, Laws of 1857, that the stock of every company liable to taxation shall be assessed at its actual value, etc., is not intended to include property, real or personal, located without the State. Such property is not subject to taxation and is not therefore within the statute.

A WRIT of certiorari was sued out in this case to review the action of the commissioners of taxes in assessing the relators. The relators are a New York corporation, and have their principal place of business in New York city, but were incorporated for the purpose mainly of establishing and running a line of steamships between ports and places on the Pacific Ocean, and such has been and is their principal business. The relators claim that all portions of their personal property permanently situated beyond the limits of the State of New York, at the time of the assessment, is exempt from taxation, and that the only portion of their personal property for which they were liable to be taxed for the year 1873, was that described in schedule C annexed to their depositions, the aggregate value of which is $1,736,371.99. The commissioners rejected this claim of the relators and fixed the assessment at $6,808,927. The opinion states the case sufficiently.

*Morris & Billings,* for relators.

*E. Delafield Smith,* counsel to the corporation, and *James C. Carter,* for respondents.

INGRAHAM, P. J. The decision of this court in the several cases of the railroad companies disposes of the questions raised in this case in regard to the indebtedness of the company. This case differs from those referred to in the fact that no valuation of the stock was permitted by the officers of the company. The commissioners, as in other cases, valued the stock at its par value, $20,000,000. The officers of the company objected and furnished a statement of the property and debts of the company, and thereupon the valuation of the capital stock was reduced one-half to $10,000,000. From this was deducted the value of their real estate $2,091,073, U. S. bonds, held by them, $100,000, and Panama railroad stock, held by them, amounting to $1,000,000, and the commissioners assessed the value at the balance $6,808,937. In regard to the valuation of the stock the commissioners, not having any sworn evidence before them, were justified in ascertaining such value from other

sources, as they do in valuing real estate. In *The People* v. *Commissoners of Taxes*, 23 N. Y. 192, 194, DENIO, J., says: "If it were alleged that this (the nominal capital), did not represent its true value, it would be their duty to look at its market price, and, if necessary, to ascertain the character and worth of the securities in which its funds had been invested. The market price of the shares would ordinarily furnish a practical test, but either the assessor or the tax payer would have a right to examine and have an estimate made of the value of the securities." I may add to this in addition, it would equally be the duty of the commissioners to consider the indebtedness as reducing the actual value of the stock, and form their estimate on that basis. The valuation was reduced one-half, a sum much larger than any indebtedness of the company, and there is no ground for supposing the commissioners did not consider such indebtedness in making the assessment.

The only question, therefore, which remains is, whether the company was not entitled to a deduction of the amount of their personal property, which was permanently located without the State. The proof shows that the greater portion of the personal property of the company was permanently located beyond the limits of the State of New York, that the ships are used exclusively in the navigation of the Pacific ocean, and never touch at any port in this State. The proof also shows a large amount of coal for the use of the vessels also out of this State in a foreign country, also vessels in process of construction abroad to be used in the Pacific ocean, and that the company is taxed on all its property in California. I am of opinion that this property comes within the exemption of the statute. The general law as to taxation declares what shall be the subject to taxation. All lands and all personal estate within the State, whether owned by individuals or corporations, shall be liable to taxation subject to the exemptions hereinafter specified. 1 R. S. 387. In the case of *The People ex rel. Hoyt* v. *The Commissioners of Taxes*, 23 N. Y. 224, the court of appeals construed this statute as not allowing the personal property of an individual in another country to be liable to taxation. This rule was at that time applied alike to individuals or corporations, and the effect of it was to exempt from taxation all personal property belonging to an individual or to a corporation permanently located out of this State. That still remains the law of the State, and the personal property of an individual or of a corporation permanently located abroad, is no more

subject to taxation here than the real estate, unless changed by the provisions of the Act of 1857, (Laws of 1857, chap. 456). This provides that " the capital stock of every company liable to taxation except such part of it as shall have been excepted in the assessment roll, or as shall have been exempted by law, etc., shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county." The question naturally arises what is exempted by law? The answer is, all property whether real or personal, having its location out of this State is not subject to taxation, and is not therefore within this statute. The intent of the legislature to deduct from the valuation of the estate of individual personal property not within this State, rests on the same foundation as that of real estate abroad. That it was intended to exempt from the assessment of stock, property not subject to taxation, appears also from the fact that while it directs the stock to be valued, it excepts property, that is exempt, and provides for the assessment of the residue. Such property is not to be valued as part of the capital stock of the corporation. Nor is there any propriety in such an assessment. The property owes nothing to the State for protection, while it pays taxes abroad in the country where it is located and used. In the *People* v. *Commissioners of Taxes*, 23 N. Y. 192, 223, DENIO, J., says : " It would be equally their duty to inquire, whether any of this property into which the capital had been converted, was exempted by law from taxation." Again he says : " Whether such exempt property is found in the hands of an individual, or in the possession of a corporation taxed upon the actual value of its capital, the rule is the same. The exempt property is to be deducted from the aggregate valuation, and the tax imposed upon the residue.

" The only difficulty which suggests itself is, that the commissioners may have omitted to include in their valuation of the stock the value of the property abroad, and therefore they should not be required to deduct it now. The rule in regard to the valuation of property, is different from the inquiry as to indebtedness. In the one case the property is valued, in the other the indebtedness diminishes the value. If the commissioners had not valued the property abroad, they should have so returned the fact. On the contrary, they say they ascertained the actual value of the capital stock of the said company to be the sum of ten millions, and deducted therefrom the items above mentioned. From this return no other conclusion can be formed than that the commissioners valued all the property of

the corporation, in valuing the stock, and made no allowance for exempt property except what was deducted. In this we think, they erred, and the relators are entitled to relief. It does not, however, follow, that the relators are entitled to a deduction from this assessment of the whole amount at which they value the personal property out of the State. The only order that can be made is to set aside the assessment, and refer the same back to the commissioners to correct the assessment by deducting the value of the personal property out of the State, unless the commissioners elect to accept the amount admitted by the relators in schedule C, to be the sum at which they should be assessed. In that case the assessment will be corrected and affirmed for that amount.

FANCHER and BRADY, JJ., concurred.

*Ordered accordingly.*