PEOPLE ex rel. A. G. HYDE & SONS v. O'DONNEL et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

TAXATION—PROPERTY SUBJECT TO TAXATION—PERSONAL PROPERTY OUTSIDE OF STATE.

Under Laws 1896, p. 795, c. 908, making personal property situated or owned within the state subject to taxation, property belonging to a domestic corporation which was outside of the state at the time of assessment and had never been in the state was not taxable, though it was customary for the corporation to bring such property into the state to be sold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 196–201.]

Clarke and Scott, JJ., dissenting.

Appeal from Special Term.

Certiorari by the people, on the relation of A. G. Hyde & Sons, to review the action of Frank A. O'Donnel and others, as commissioners of taxes and assessments of the city of New York. From an order sustaining the writ and reducing an assessment, respondents appeal. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Curtis A. Peters, for appellants.
James J. Allen, for respondent.

PATTERSON, J. The relator, a domestic corporation, was assessed for the purposes of taxation for the year 1904 at the sum of $940,000. That amount was made up by including within it the value of

certain tangible personal property situate outside of the state of New York, but which the tax commissioners determined was taxable within the state. This personal property was valued at $770,000, and consisted of raw material at certain mills in other states in which it had been purchased, or at finishing mills in other states, and raw material in process of manufacture at other mills also located outside of the state of New York. It was the custom of the relator to buy such raw material, to keep it at the place at which it was purchased outside of the state of New York until it was sent to finishing mills, also outside of this state, and where it was converted into finished fabrics. Five-sixths of those fabrics were brought to New York for sale, and one-sixth was sent to Chicago. On the first Monday of January, 1904, none of this material was (and it never had been) in the state of New York. Its value was included by the commissioners in their assessment upon the theory that it was taxable because, in accordance with the custom of the relator, it would be brought within this state to be sold. On a writ of certiorari procured to review this assessment, the court at Special Term reduced it by the sum of $770,000, and decided that the property mentioned as being situated outside of the state of New York was not taxable, from which decision the commissioners appeal.

Under the Revised Statutes, this personal property would not have been taxable. Hoyt v. Tax Commissioner, etc., 23 N. Y. 224. By the Tax Law, Laws 1896, p. 795, c. 908, it is provided that real property within this state, and all personal property situate or "owned" within this state, is taxable, unless exempt from taxation by law. Construction was given to that provision by this court in the case of People ex rel. Orinoka Mills v. Barker, 84 App. Div. 469, 83 N. Y. Supp. 33, and it was therein held that certain raw material and manufactured goods owned by the relator but situate at mills in Pennsylvania were not taxable here, and in effect that the ruling in the Hoyt Case still prevailed. The Orinoka Mills Case must be regarded as controlling here, unless it can be held that the relator's goods above mentioned were only temporarily without the state. But those goods and the raw material never were within this state. The right to tax them arises under the statute only, and the test of the right to tax them is the situs of the property on the first Monday of January, 1904. The fact of dominion of the state over the subject of taxation at the time the tax is imposed is declared to be the test in the Matter of Swift, 137 N. Y. 85, 32 N. E. 1096, 18 L. R. A. 709. What was to become of the property after that date is irrelevant. The relator might or might not bring it within the state, and the mere presumption arising from its customary dealing with its property is not a detriment factor in the consideration of its liability to the imposition of a tax on the first Monday of January, 1904. The case of the Orinoka Mills is binding authority, and what was there decided requires an affirmance of the order appealed from.

The order should be affirmed, with costs and disbursements. All concur, except CLARKE and SCOTT, JJ., who dissent.

CLARKE, J. (dissenting). It seems to me that People ex rel. Orinoka Mills v. Barker, 84 App. Div. 469, 83 N. Y. Supp. 33, is clearly distinguishable from the case at bar. If not, although agreeing with Mr. Justice Hatch in his dissenting opinion therein, I would feel bound by the decision of this court. In that case it appeared that the relator had machinery and fixtures, as a part of its factory, located in the state of Pennsylvania, and that there was at the relator's mills in said state $25,-000 in merchandise and materials. The petition alleged that all of the assets of the relator were situate without the state of New York and within the state of Pennsylvania, "and there subject to assessment for taxation, and although assessments for taxation are and were paid thereon by your petitioner in said state of Pennsylvania." It was upon those facts that a divided court held that the merchandise and materials at the mills were not taxable.

The authority relied on in that case (People ex rel. Hoyt v. Com'r of Taxes, 23 N. Y. 224) was itself as distinguishable. A resident of New York had capital employed in business in New Orleans which was taxable and was taxed there, and farm stock and household furniture in the state of New Jersey which were taxable by the laws of the state of New Jersey. The property had an actual permanent situs outside the state, and the decision of the court rested upon the proof that the property was outside the state.

In the case at bar, however, the relator, a domestic corporation, having its principal office or place of business in the city of New York, buys raw material which consists of cotton cloth in the gray from various mills in the South and in the New England states. This cotton cloth is kept at the mills until used, when it is shipped to the bleacheries and finishing works located in New England, New Jersey, and the South, where it is made up or converted into the finished fabric in which the company deals. The process of conversion takes upon the average four or five months. Five-sixths of the product is shipped to New York for sale and disposition, and one-sixth to its office in Chicago. On the second Monday of January, 1904, the amount of raw material (gray cloth), goods in process, and finished product was $924,611.63. No part of this tangible personal property belonging to the relator had ever been within the state prior to that date. It belonged, however, to the relator, and subsequently came within the state and was disposed of here. All the debts of the relator, amounting to $947,203.61, wherever payable and to whomsoever payable, in or out of the state, had been allowed as a reduction. The tangible personal property outside of the state determined to be taxable in the state was fixed at $770,000, and was determined by the commissioners to be taxable upon the ground that it had no permanent situs without the state. The reason why property permanently located without the state is held not to be taxable here is that it is presumed to be taxable where located, and to tax it here would be to subject it to double taxation.

I fail to see how goods in transit from mill to bleachery, and thence to store here, can be reached and taxed in the state of temporary situs. The burden is upon the relator, it seems to me, to sustain the allegation of the petition, and to show that the goods are so permanently

located in the foreign state as to be there taxable. There is no allegation and there is no proof that the gray cloth or finished product is taxed or taxable anywhere outside of this state. The property of non-residents is not assessable within this state unless permanently invested in business within the state. Tax Law, Laws 1896, p. 800, c. 908, § 7. The goods upon which this tax was assessed would not be taxable in the foreign state, because not permanently invested in business there, if the laws of the foreign state were similar to ours, and there is nothing to show that they are different; and therefore, instead of imposing double taxation if taxed here, it would seem, if not taxed here, they would escape all taxation. So that a great and prosperous business house, with large assets in the shape of $770,000 worth of property beyond all its debts and liabilities, which shortly is brought in and disposed of within the state, escapes taxation thereon because on assessment day it has not, though on its way, yet reached the state. It seems to me that the case is controlled by People ex rel. Pacific Mail S. S. Co. v. Com'rs of Taxes, 64 N. Y. 541. In that case, exemption was claimed upon certain steamships in process of construction outside of the state of New York. Of course, such steamships never were and could not have been at any time prior to their completion within this state. The court refused the exemption. Substituting the gray cloth articles in the case at bar in process of manufacture, for steamships, and it would seem as if the cases were analogous. "If such an exemption can be upheld at all, it cannot be sustained where the change is only for a season, uncertain and vacillating, and merely consists in the building of vessels which are owned by an incorporation which has a location for the purposes of taxation within the state."

It therefore seems to me that the order appealed from should be reversed and the assessment sustained.

SCOTT, J., concurs.