# WARREN C. MESERVE *v.* JONAS FOLSOM ET AL.

*Notice when list is doubled. Evidence of taxable residence. Introduction of evidence after verdict. Effect of partial invalidity of tax upon warrant.*

1. Where a taxpayer's list is made up by the doubling process, a written notice from the listers referring to the section of the statute under which they have proceeded and notifying the taxpayer that they have "assessed" him a certain sum, is sufficient.

2. The question being whether the plaintiff was a taxable resident in the town of Wheelock in 1883, *held,* permissible to show by cross-examination of the plaintiff that he had had no residence outside of Caledonia county since 1874, and that he paid no taxes in 1880 and 1881.

3. The plaintiff claimed that in 1882 he resided in Sutton. *Held,* that he might be inquired of whether he was allowed to vote in that town at the September election of that year.

4. Plaintiff testified that in 1883 he had not a taxable residence in Wheelock, but that he had in Sutton or Lyndon. *Held,* that it might be shown by one of the listers of Lyndon and by the grand list that he had no list in that town for that year.

5. The court may admit an item of proof between verdict and judgment when it does not appear that the verdict would have been affected thereby, and no objection was made to the judgment for that reason.

6. An arrest upon a tax warrant is not rendered illegal by the fact that the per cent assessed raises a sum slightly in excess of the gross sum voted.

7. An officer making an arrest upon a valid tax warrant is not rendered a trespasser *ab initio* by the fact that he demands and receives with the tax an illegal fee for the service of the warrant, where the taxpayer makes no tender of the amount legally due and does not object specifically to the illegal fee.

This was an action for false imprisonment. Plea, the general issue with notice of special matter in justification. Trial by jury at the December Term, 1887, Caledonia County, TAFT, J., presiding. Verdict and judgment for the defendants. Exceptions by the plaintiff.

The evidence of the plaintiff tended to show that he was arrested by the defendants, taken by them to the county jail at St. Johnsbury, delivered into the custody of the jailer, and that he paid a pretended tax of $7.99, and $9.86 costs, $17.85 in all, to avoid being incarcerated in jail.

The defendants justified under a tax warrant in favor of District No. 5 in Wheelock, and one question in dispute was whether the plaintiff had a taxable residence in the town of Wheelock, April 1st, 1883. The plaintiff claimed that his residence was either in Sutton or Lyndon at that time. The plaintiff did not in the opening of his case introduce any evidence as to his residence, but the defendants were permitted to show by him upon cross-examination that in 1874 he broke up housekeeping and since then had had no domicile outside of Caledonia county ; that he paid no taxes anywhere in 1880 and 1881 ; that in 1882 he paid no tax in Sutton, except a road tax, and was not allowed to vote there in September of that year. The plaintiff claimed that his residence in 1882 was in Sutton.

The defendants were also permitted to show by one of the listers of Lyndon that the plaintiff was not set in the list of that town for the year 1883.

The plaintiff did not return an inventory in Wheelock for the year 1883, and the listers made up the list by the doubling process. The following notice was served upon him :

" Mr. Warren Meserve : Sir—Agreeable to an act revising, consolidating and amending the laws relating to the grand list and in accordance with section 17 of said act, have assessed you with money on hand and debts due, $1,565 and agreeable to said act have doubled the same, making $3,130. We shall meet at the town house in Wheelock, on Tuesday, May 1, and Tuesday, May 8, at 2 o'clock P. M. on each of said days to hear appeals. You will please take due notice and govern yourself accordingly."

During the trial a book was put into the case which purported to be the quadrennial appraisal of the town of Wheelock. Subsequently during the argument it was claimed that there was another book. The town clerk, who had been present as a witness, having been discharged and it not being possible to recall him then, the court ordered the arguments to proceed. After verdict and before judgment the witness was found and the book introduced. It did not appear from the

exceptions that the plaintiff made any objection to the introduction of the book as evidence, but he did claim that the quadrennial appraisal as shown by the book was defective.

The district voted to raise the sum of $65. The prudential committee assessed a tax of twenty-five cents on the dollar, which raised on the entire grand list of the district the gross sum of $67.78.

The plaintiff claimed that the tax attempted to be collected was not the one voted.

The plaintiff also claimed that the defendants were trespassers *ab initio* by reason of the fact that they had demanded of him more than their legal fees.

The defendants figured up the amount due, when the plaintiff desired to pay the sum necessary to obtain his release, and the plaintiff paid the amount demanded by them. This computation included fees to which the defendants were not entitled. The plaintiff took no part in the computation, and neither assented nor objected to the fees taxed. He made no tender of the amount actually due.

*Alex. Dunnett* and *E. May*, for the plaintiff.

The notice to the plaintiff was insufficient. *Rowell* v. *Horton*, 58 Vt. 1; Cool. Tax. 268.

The evidence that the plaintiff was not set in the list in Lyndon in 1883 was inadmissible. It was simply the judgment of the listers upon that point, expressed, so far as appears, without any hearing even. *State* v. *Hopkins*, 50 Vt. 316; *Conn. & Pass. R. R. R.* v. *Baxter*, 32 Vt. 805; *Sterling* v. *Sterling*, 41 Vt. 80; *Gregory* v. *Bugbee*, 42 Vt. 480; *Shaw* v. *R. R. Co.*, 8 Gray, 45; *Atty. General* v. *Dublin*, 38 N. H. 459; *People* v. *LaCost*, 37 N. Y. 192.

A portion of the sum which the plaintiff was compelled to pay to obtain his release was not a legal charge against him even if the tax was valid. Hence the defendants were trespassers *ab initio*. *Esty* v. *Wilmot*, 15 Gray, 168; *Harrigan* v. *Boen*, 57 Vt. 644; Cool. Torts, 316–461.

*Ide & Stafford*, for the defendants.

The evidence tending to show the movements of the plaintiff previous to 1883, where he lived, what taxes he paid, where he voted, was admissible upon the question as to whether the plaintiff had a taxable residence in Sutton. *Hurlbut* v. *Green*, 42 Vt. 316; see authorities cited to this effect in Belden & Ide's brief in *Fire Assn.* v. *Bank*, 54 Vt. 665.

The slight excess of the assessment over the tax voted will not vitiate the tax. *Rowell* v. *Horton*, 57 Vt. 31; *Chandler* v. *Bradish*, 23 Vt. 416.

It was permissible to show that the plaintiff was not listed in Lyndon in 1883. *Fulham* v. *Howe*, 60 Vt. 360.

The defendants are not trespassers *ab initio* because they demanded and received illegal fees from the plaintiff. There was no tender of the sum lawfully due, and it cannot be presumed that the plaintiff was detained to compel the payment of the unlawful fees. *Henry* v. *Tilson*, 17 Vt. 480; Murfree Sher. s. 933; Add. Tor. s. 924; *Shorland* v. *Govett*, 5 Barn. & Cres. 485; *Stoughton* v. *Mott*, 25 Vt. 668; *Hyde* v. *Cooper*, 26 Vt. 552; *Pierson* v. *Gale*, 8 Vt. 509; *Gates* v. *Lounsbury*, 20 John. 427; 1 Hill. Tor. 107–9; 1 Smith Lead. Cas. 216, 221.

The opinion of the court was delivered by

POWERS, J. The listers of Wheelock, after making up the plaintiff's list, notified him in writing that "agreeable to an act revising, consolidating and amending the laws relating to the grand list and in accordance with section 17 of said act," they had assessed him in a stated amount for money on hand and debts due, and agreeably to said act had doubled the same, etc.

By this notice the plaintiff could not be misled concerning the proceedings of the listers. The public law of the State is referred to as the basis of their procedure.

Section 17, which sets forth the method by which the list of persons not returning an inventory is made up, is in express terms referred to. The word "assessed" used in the notice is

not to be construed in a technical sense, but is to have the meaning that " plain people give it in dealing with questions touching the making of a grand list."

The entire system of taxation, so far as it devolves upon town officers, is to be looked upon by courts with a practical eye. It is to be remembered that, as a general rule, men not learned in the law nor skilled in dialectics are to have the administration of the law and so it is presumable that the Legislature, in prescribing methods and formalities which are to be observed, has couched them in language which is to be understood in its popular sense by the people at large.

It is true that, technically speaking, the listers could not " assess " the plaintiff and then double the assessment.

But in this notice they informed him how they had assessed him and referred to the law, which he was bound to know, to show how they had finally made up his list. The notice prescribed by the statute must be formulated in such a manner as will apprise the taxpayer reasonably of the action taken, to the end that he may seek relief by appeal, if he desires.

The notice in this case fully complies with this rule, and could not mislead the taxpayer unless he employed some skilled attorney to misread it for him.

The evidence that the plaintiff paid no taxes in 1880 and 1881 was properly admitted. The plaintiff complains that this evidence created a prejudice against him, indicating that he was a tax dodger. But that prejudice is one that his own conduct inspired, if it was created at all. The evidence drawn out of the plaintiff in cross-examination indicated that he had led a roving life so far as his domicile for taxation purposes was concerned.

The defendants claimed that the plaintiff resided in Wheelock in 1883. The plaintiff claimed that he did not. As tending to show that he did not, he claimed that he resided either in Sutton or in Lyndon. It was the duty of the plaintiff to have a taxable residence somewhere. Though it is true that a tax assessment is a proceeding in invitum and the law which operates to take from a citizen his property for public purposes is

Meserve v. Folsom et al.

to be strictly construed, nevertheless the taxpayer is under a duty in view of the protection afforded him by the law, to contribute his just proportion to support the government under which he lives, and the question of his liability to taxation in a given locality is to be tried in the light of this fact. *Hurlbut v. Green*, 42 Vt. 316.

As evidence that he did not reside in Sutton in 1882 it was proper to show, among other things, that he paid no taxes there in 1882, the payment of taxes being one of the indicia of residence. So, too, evidence that he paid no taxes anywhere in 1881 is evidence, inasmuch as the case showed that he had been in Caledonia county since 1874, and thus that he should have been taxed in that county. This evidence shed some light upon the character of his domicile in Caledonia county just before his claimed residence in Sutton in 1882, and strengthened the notion that his residence had been ambulatory all along to 1883. Whatever unfavorable inferences these facts gave rise to were the outgrowth of the plaintiff's neglect of his public duty.

Residence for purposes of taxation is made up of actual domicile coupled with a voluntary and concurring intent. The intent to reside, in many cases, is decisive. It is equally true that the intent to reside but in such a manner as to *avoid* taxation will not be controlling if the actual domicile is established by clear evidence. To shed light upon the true nature of this intent, in the concrete case, it is competent to show other domiciles, near the time and having similar features and disclosing a characterizing intent. The plaintiff had resided in Caledonia county, somewhere, during the three years prior to 1883. He could not satisfy his own mind, even, whether in 1883 his residence was in Sutton or in Lyndon, although he left Topsham in 1874 and never afterwards kept house outside Caledonia county. We are given no light as to his whereabouts down to 1882, except that in 1880 and 1881 it was in a place where he had no taxes to pay.

Now to enable the jury to collect the intent which underlaid his domicile in Wheelock in 1883, as the defendants claimed, or

(33)

his domicile in Sutton or Lyndon as the plaintiff claimed, it was proper for the jury to look at the character of his domicile in 1882 and 1881 and 1880, if he had any, or claimed to have had any; and if such domicile had the result to clear him from the payment of taxes, the inference is both logical and fair, in view of the fact that he owed a public duty to pay taxes somewhere, that his residence was of a shifting and roving character; and as every man is presumed to intend the natural consequences of his own voluntary acts, it follows that the intent to escape taxation was the underlying purpose of his unsettled domicile.

If his domicile in 1883, as he himself defines it, was of a similar character, the same intent is fully collectable. *Eastman* v. *Premo*, 49 Vt. 355.

Now the jury are to take the defendants' evidence tending to show a fixed domicile in Wheelock in 1883 and set over against it the claim of the plaintiff as to his domicile in Sutton or Lyndon, equivocal as his counsel concedes, and in the light of the plaintiff's duty and the light of his discharge of that duty just before 1883, say, first, did he have a domicile *in fact* in Wheelock in 1883 and, secondly, was it intended by him to be of a fixed and permanent character for all purposes except taxation. If it be this, the law will not permit the fact of actual domicile to be controlled by the unlawful intent.

As evidence that the plaintiff's claimed residence in Sutton in 1882 was fictitious, among other facts, the defendants were allowed to ask the plaintiff in cross examination if he was allowed to vote in Sutton in 1882, and he replied that he was not. It is now argued that this question called for the action of the board of civil authority and this was hearsay evidence. But the question was not admitted for the purpose of proving what the board said or did respecting the plaintiff's residence in Sutton. It was admitted to show a *fact*—to show that one of the characteristics of residence was lacking.

It is clear that it would have been competent for the plaintiff to prove the *fact* that he *did* vote as evidence that he had a *voting* residence in town. It would have been competent for

Meserve *v.* Folsom et al.

him to prove that he had a grand list and paid taxes in Sutton, as evidence of his *taxable* residence in Sutton. The converse of these facts is plainly competent evidence for the defendants. If he had voted the implication is that the board of civil authority conceded that he had a voting residence in town. If he had a grand list, the implication is that the listers decided that he was a resident taxpayer in town. *Hurlbut* v. *Green, supra.*

The evidence of Mr. Ingerson, the lister of Lyndon, and of the grand list of that town for 1883 was properly admitted to negative the claim of the plaintiff that his residence was in Lyndon that year rather than in Wheelock. Whatever tended to overthrow his claim supported the claimed residence in Wheelock. *Hurlbut* v. *Greene, supra.*

The slight excess in the plaintiff's tax did not vitiate the assessment. *Rowell* v. *Horton,* 57 Vt. 31. And no wrongful detention of the plaintiff is shown which would operate to make the defendants trespassers *ab initio.* Part of the tax at all events was lawful and would justify his arrest and detention. It is not to be presumed that he was detained until the unlawful excess was paid. Being rightfully held for part the detention was justifiable. *Shorland* v. *Govett,* 5 Barn. & Cres. 435 ; *Stoughton* v. *Mott,* 25 Vt. 668.

No error is apparent in the discretion exercised by the trial court respecting the admission of the book relating to the quadrenial list of Wheelock. A large discretion must necessarily be confided to the trial judge respecting the order and the time when evidence may be received.

Proof is often received after an argument has commenced ; and in this case, though the book was put into the case after verdict and before judgment, it is not apparent that the verdict would have been affected had it been offered earlier, and, at all events, if it was error the plaintiff should have interposed an objection to the judgment.

As the charge is not referred to by the exceptions and is not before us, no question arises upon it.

*Judgment affirmed.*