[No. 1348.]

## S. W. BOWMAN, APPELLANT, *v.* D. B. BOYD, TREASURER AND EX-OFFICIO TAX RECEIVER OF WASHOE COUNTY, RESPONDENT.

TAXATION—EVIDENCE OF NON-PAYMENT OF TAXES.—On an issue as to appellant's liability to assessment for taxes on personal property in Nevada, which liability he seeks to avoid by a claim that he is a resident of another state, evidence that he escaped taxation in the latter state by declaring that his property was situated in Nevada is admissible as rebutting the presumption that he paid taxes on his personal property at the place of his claimed residence.

Argument for Respondent.

IDEM—RESIDENCE OF TAXPAYER.—Appellant had no fixed place of residence but spent the greater portion of his time in Nevada attending to mortgage investments made by him there. He claimed to be a resident of California, but had little property and no business there, and all of his securities were in Nevada. He escaped taxation in California by stating that his property was situated in Nevada. *Held*, that appellant would not be allowed to entirely escape taxation on his personal property, and that as his only business was conducted in Nevada, the securities on his investments, in the making of which his business consisted, were properly taxable in Nevada.

APPEAL from the District Court of the State of Nevada, Washoe county.

*R. R. Bigelow*, District Judge.

The facts are stated in the opinion.

*Thos. E. Haydon*, for Appellant.

I.   The law of this state is well settled that money at interest of a non-resident of this state, secured by mortgage or otherwise, is a chose in action and that such choses in action follow him to his abode and are not taxable in this state.   Therefore the tax on appellant's choses in action was illegal and void and should have been returned to him by judgment of the lower court. (*State* v. *Earl*, 1 Nev. 397; *Drexler* v. *Tyrell*, 15 Nev. 127; *State* v. *Carson Sav. Bank*, 17 Nev. 162; *Barnes* v. *Woodbury*, 17 Nev. 385; *Robinson* v. *Longley*, 18 Nev. 72; *Ford* v. *McGregor*, 20 Nev. 450; *Whitmore* v. *McGregor*, 20 Nev. 452; Story on Con. of Laws, Sec. 381; *People* v. *Niles*, 35 Cal. 286.)

II.   Plaintiff had the right to pay his entire tax to prevent a cloud upon the title to his real estate, or to remove the same.   That the entire tax could be paid under protest and the illegal part of it recovered back to prevent or to remove such doubt on the title of plaintiff is settled by the law of this state. (*Wells, Fargo & Co.* v. *Dayton*, 11 Nev. 166; *Conley* v. *Chedic*, 7 Nev. 336; *Ritter* v. *Patch*, 12 Cal. 299; *Dodd* v. *City of Hartford*, 25 Conn. 238; *Weyse* v. *Crawford*, 85 Cal. 197.)

*T. V. Julien*, for Respondent.

I.   The record clearly shows that appellant paid the tax voluntarily and without the least semblance of duress or coercion.   When, as in this case, no seizure of the property could have taken place except by judicial process in which the party

would have had his day in court, it comes clearly within the established rule that "payment of taxes in the absence of legal duress will be deemed voluntarily, and the money cannot be recovered back." (*Mayor* v. *Lefferman*, 4 Gill. 425; *Cook* v. *Boston*, 9 Allen, 393; *Mills* v. *Austin*, 53 Cal. 152; *Merrill* v. *Austin*, 53 Cal. 379; *Preston* v. *Boston*, 12 Pick. 14; *Flower* v. *Lane*, 59 N. Y. 603; Dillon's Mun. Corp. Secs. 940, 942; *Cahaba* v. *Burnett*, 34 Ala. 400; *Tailor* v. *Board of Health*, 31 Pa. St. 73; *Mays* v. *Cincinnatti*, 1 Oh. St. 268.)

By the Court, Murphy, J.:

Plaintiff brought suit in the district court of Washoe county to recover from the defendant, as treasurer and *ex-officio* tax receiver of said county, the sum of nine hundred and forty-eight dollars and seventy cents taxes paid under protest. It is alleged in the complaint that the plaintiff is, and has been for ten years and more, a resident and citizen of Placer county, state of California. That during all of said time he has been engaged in loaning money on mortgages upon real estate and other securities in Washoe county, state of Nevada. That on the 27th day of March, 1889, the plaintiff being then in Washoe county, the assessor of said county demanded of him a statement of his taxable property situate within said county. In compliance with said request the plaintiff furnished said assessor the following list:

| | |
|---|---:|
| Watch, valued at | $125 00 |
| Money on hand | 1,300 00 |
| Real estate | 5,500 00 |
| Total | $6,925 00 |
| Tax on same | 165 38 |
| That thereafter the assessor added to said list the following amounts: | |
| Money on hand or in bank | $1,300 00 |
| Money secured by liens or loaned on mortgage, bond, or other securities | 34,500 00 |
| Added by assessor | $35,800 00 |
| Tax on same | 948 70 |

Which amount was paid to the treasurer under protest, No-

vember 21, 1889. The cause was tried before the court without a jury, and judgment rendered in favor of defendant for his costs. From this judgment and the order overruling his motion for a new trial plaintiff appeals.

The only claim against the validity of the assessment and in support of his protest is that the plaintiff was a citizen and resident of the state of California. The court found as facts in the case that the plaintiff was, and had been since 1855, a resident of the state of California. That for the past two years he had no place of business in that state, and for nine months of each of the years 1888 and 1889 he was in Washoe county, Nev. The plaintiff testified that since the year 1855 he had resided at Yankee Jim's, Placer county, Cal. He had a house and lot and mining claims. From 1855 to 1867 he was engaged in mining. About the latter year mining was suspended at that place, since which time he had no business there or anywhere except loaning out money, which he could do and did do wherever he was stopping at the time, and kept no place for that purpose anywhere. That for about twelve years he has been loaning out money in Washoe county, Nev., by himself and through his agent. During said time he would visit Reno, and remain a week or a few weeks at a time. He had given A. H. Manning, a resident of Reno, a general power of attorney to act for him. In the month of December, 1888, or early in January, 1889, he came to Nevada on business and remained until August; then went to San Francisco, remained a month, went to Placer county, remained about a month, and in November returned to Nevada, where he remained until the trial of this case, which was in April, 1890. Against his will he has been kept in Washoe county from temporary calls of business three-fourths of his time during the years 1888 and 1889, during all his stay in Reno. During those years he occupied a room in his own house and paid rent for it. The notes and mortgages taken for money loaned in Washoe county and assessed to him, were in his possession in Washoe county from January until November, 1889.

On the part of the defendant the assessor of Washoe county testified that during the years 1888 and 1889 he had seen the plaintiff almost daily in Reno, with short intervals of absence; that he was certain that the plaintiff had been in the county eight or nine months in each year. A. W. Kinley, assessor of

Placer county, Cal., testified that he knew the house or resi-
dence of the plaintiff at Yankee Jim's. That it was assessed at
one hundred dollars. Had not seen or known of the plaintiff
being in Placer county more than a month or two during the
years 1888 and 1889. This witness was then asked "what
property had been assessed to plaintiff in Placer county for the
year 1889." Plaintiff objected to such evidence, "that it was
immaterial and irrelevant to this controversy, what property
was or was not assessed to plaintiff in Placer county, Cali-
fornia, in 1889; that plaintiff is only liable in this state for such
property as is lawfully taxable in this state, whether taxed in
another state or not." The objection was overruled, and the
plaintiff took an exception. The witness then answered "that
no personal property was assessed to the plaintiff in Placer
county, California, in 1889." The witness was then asked
"what plaintiff stated to him about where his property was
situated when he assessed him." Plaintiff objected that his
statements as to the *situs* of his property to said assessor were
immaterial, as the only question in this action is whether the
property described in his complaint was lawfully subject to tax
in the state of Nevada. Objection overruled. Plaintiff ex-
cepted. Witness answered "that plaintiff told him that all his
property was situate in the state of Nevada." This evidence
was admissible.

The contention of the plaintiff was that, claiming to be a resi-
dent of the state of California, and the property assessed in
Washoe county, being of such character as necessarily follows
the person of the owner, it should be assessed at the residence
of such owner. The presumption would be that such assess-
ment had been made, because every person is presumed to com-
ply with and obey the law; but such presumption can be over-
come by positive proof. There are no two principles better
established in law than those which provide "that a person
intends the ordinary consequences of his own voluntary act,"
and "that no man will be permitted to take advantage of his own
wrong." Whenever a party has by his own declaration, act or
omission, intentionally and deliberately misled another, the
party making such mistatements can not in any litigation aris-
ing out of such declaration, act, or omission be permitted to
falsify it. Therefore when the plaintiff made the statement to
the assessor of Placer county, California, that the *situs* of his

securities were in Washoe county, Nevada, and by such declaration he avoided the payment of taxes on such securities in the state of California for the year 1889, he cannot be permitted to say now: Washoe county can not assess and collect taxes on my securities, because I am a resident of California. Our statute provides: "All property of every kind and nature whatsoever within this state shall be subject to taxation."

It will not be disputed that money at interest, secured by mortgage or otherwise, follows the person of the owner, and is taxable to him at his place of residence. But when we speak of residence for the purposes of taxation, we mean a fixed, permanent place, where a person transacts his business; the place where the property is located and the taxes paid. A court will not relieve a party from the payment of taxes until such time as he has shown that he has contributed his just proportion to the support of the government. The owner of property is bound to contribute his just share for carrying on the expenses of the government, and he ought not to be permitted to throw the burden which he should bear on others. Before the plaintiff could have legally asked for the return of the amount paid as taxes he should have been in a position to show that the property has been assessed by some other assessor, and he would be required to pay the taxes.

The case of *Hurlbut* v. *Green*, 42 Vt. 318, was for the value of a horse that had been taken and sold for taxes. The plea was that the party was not a resident of the town in which he was assessed, but was a resident of the town of Danville. On the trial of the case the defendant offered to prove that the plaintiff returned no list of his property in the town of Danville in 1866, and was not taxed in that town. The evidence on the plaintiff's objection was excluded. Passing on the admissibility of the testimony, the supreme court said: " The question upon which the parties were at issue is one of domicile, or whether on the 1st of April, 1866, the plaintiff was an inhabitant of Waterford for purposes of taxation, or whether at that time he was an inhabitant of Danville. This question involves not only the fact of an actual residence of the party, but the intent with which it began and was continued. * * * This is to be ascertained by the duration of the residence, by what the party said, by his conduct, and by facts and circumstances which tend to disclose or show how he regarded it; and under some circumstances, by

what he omits or neglects to do. In this case we cannot presume that the plaintiff abandoned his domicile, and took up a temporary residence in Danville, for the purpose of evading the payment of his just and proportionate share of taxes, which is a common duty and burden resting upon all, and hence the requirement that all taxable inhabitants shall give in all their lists. The plaintiff's acts and conduct are to be considered in the light of, and as affected by, this requirement.   *   *   *
This claim of residence in Danville and the facts are to be considered in connection and as involved in the issue. Consequently any evidence that had a tendency to show the falsity of either was admissible. Proof that the plaintiff had given in a list in Danville would have been admissible in support of his claim, and so would the circumstance, so to call it, that he did not, as affording an inference that it was unfounded, and that he so regarded it."

In the case of *Meserve* v. *Folsom*, 62 Vt. 508, the same court said: "The evidence that plaintiff paid no taxes in 1880 and 1881 was properly admitted. The plaintiff complains that this evidence created a prejudice against him, indicating that he was a tax dodger. But that prejudice is one that his own conduct inspired, if it was created at all. The evidence drawn out of plaintiff in cross-examination indicated that he had led a roving life, so far as his domicile for taxation purposes was concerned. The defendants claimed that the plaintiff resided in Wheelock in 1883   The plaintiff claimed that he did not. He claimed that he resided either in Sutton or in Lyndon. It was the duty of the plaintiff to have a taxable residence somewhere. Though it is true that a tax assessment is a proceeding *in invitum*, and the law which operates to take from a citizen his property for public purposes is to be strictly construed, nevertheless the taxpayer is under a duty in view of the protection afforded him by the law, to contribute his just proportion to support of the government under which he lives, and the question of his liability to taxation in a given locality is to be tried in the light of this fact.

As evidence that he did not reside in Sutton in 1882 it was proper to show among other things, that he paid no taxes there in 1882; the payment of taxes being one of the indicia of residence.   *   *   *   Whatever unfavorable inferences these facts gave rise to were the outgrowth of the plaintiff's neglect of his

public duty.   Residence for purposes of taxation is made up of actual domicile, coupled with a voluntary and concurring intent.   The intent to reside, in many cases, is decisive.   It is equally true that the intent to reside, but in such a manner as to *avoid* taxation, will not be controlling.   To shed light upon the true nature of this intent in the concrete case, it is competent to show other domiciles, near the time and having similar features, and disclosing a characterizing intent.   Did the plaintiff have a domicile in *fact* in Wheelock in 1883, and was it intended by him to be of a fixed and permanent character for all purpose except taxation.   If it be this, the law will not permit the fact of actual domicile to be controlled by the unlawful intent."

We are of the opinion that for the purposes of taxation the assessment of the persons and property whose locality can be readily changed must of necessity refer to the *situs* of the property at some particular time or day, as, for instance, our statute provides "that the lien for taxes shall attach on all property within the state on the first Monday in March in each year." From the plaintiff's own testimony he has had no fixed residence or place of business.   Since the year 1867 he has led a roving life.   During the years 1888 and 1889 three-fourths of his time was spent in Washoe county, attending to his business of loaning and collecting his money.   All his securities were there, and in fact from the evidence we should infer that they were always kept in Washoe county.   He owned real estate in Washoe county of the value of five thousand dollars.   Had a room in his own house rented during those two years.   The total value of property assessed to him at Yankee Jim's, Placer county, Cal., was but one hundred dollars, and consisted of his house and lot.   When the assessor of Placer county asked plaintiff for a statement of his personal property for the year 1889 he gave in this house, and when asked if he had no other property subject to taxation in California plaintiff answered: "No; all my property is situated in the state of Nevada."   He tells the officers of Washoe county, Nevada, "Yes, I have thirty-five thousand eight hundred dollars in collaterals more than I have given a list of, but you cannot assess them to me, *because I reside in California.*"

Under this state of the case it was proper for the judge to take into consideration the character of the plaintiff's residence

during the assessing period of the year 1889, if he had any; and if he used such claim of residence merely as a pretext to escape the payment of taxes the inference would be in view of the fact that he owed a public duty to pay taxes somewhere, and as from his own statements he did not have a fixed permanent residence or place of business, and as every man is presumed to intend the natural consequences of his own voluntary acts and declarations, it follows that the plaintiff's claim of residence in California was to escape taxation in Nevada. And his statement to the assessor of Placer county, Cal., was true, because all his securities were in Nevada, but such statement was made to said assessor to avoid the payment of taxes on his collaterals in the state of California. Therefore his said claim of residence and his statement to the assessor in Placer county, was claimed and made to escape taxation in both states, and to avoid the performance of a public duty by contributing his just proportion to the support of the government. He will not be permitted to take advantage of his own wrong. The books are full of cases defining residence and non-residence. But we fail to find any, where the question of taxation has arisen, but what the courts hold that it must be a fixed and definite one, not roaming from place to place, and the party must show that he pays his taxes in that place.

The case of *Board of Supervisors* v. *Davenport*, 40 Ill. 202, is a case in every way similar to the one under consideration. There the plaintiff had loaned two hundred and fifty thousand dollars in the state of Illinois, taking notes and mortgages to secure its payment. He was assessed upon money at interest secured by mortgages, and brought his action to enjoin the officers from the collection of the tax on the ground that he was a resident of the state of New York. The circuit court sustained the plea, holding that the securities could not be assessed in Illinois so long as the plaintiff claimed to be a resident of the state of New York. On appeal the supreme court said: " He [meaning the plaintiff] now insists, although doing this profitable and extensive business under the protection of the laws of this state, he is not amenable to the revenue laws of the state; that he was a mere visitor and temporary sojourner, having his residence in the state of New York, to whose authority he was liable for these taxes and not to this state. There is no allegation in the bill of complaint that the taxes have been paid on

those moneys to the state in which he claims to be a resident. It is not necessary that a person, to be amenable to the taxing powers of the state, should be a citizen of the state or domiciled within it. The question is narrowed down to this on the proofs: Did he have a regular and permanent business here, and did he remain here, and continuously, for a time sufficiently extended to enable him to transact that business? Where were his business operations conducted? Had he a fixed and known place of business?" The judgment of the circuit court was reversed, and the bill ordered to be dismissed. From the facts in this case we are convinced that the plaintiff and his collaterals were amenable to the revenue laws of this state at the time the assessment was made in March, 1889.

After the taxes became due, but before they became delinquent, the plaintiff appeared at the treasurer's and *ex-officio* tax receiver's office, and paid his taxes under written protest, giving as his reasons for so doing, "to prevent the accruing of any penalties for non-payment thereof, and to prevent any liens attaching on his real estate for the taxes." An answer to this protest is that if the assessment was illegal, penalties could not be added, and the plaintiff could by paying or tendering the amount that he admitted to be a legal charge against his property, prevent any liens from attaching on his real estate. The payment in this case by the plaintiff with a full knowledge of all the facts, although under protest, was a voluntary payment, and cannot be recovered back. (*Wabaunsee Co.* v. *Walker*, 8 Kan. 433; *Lamborn* v. *County Com'rs*, 97 U. S. 181; *Railroad Co.* v. *Commissioners*, 98 U. S. 542; *Richardson* v. *City of Denver*, 30 Pac. Rep. 333.) The judgment of the district court is affirmed.

BIGELOW, J., did not participate in the foregoing decision, having presided at the trial of the case below.