STATE Ex Rel. UNITED STATES LINES COMPANY v. SECOND JUDICIAL DISTRICT COURT OF NEVADA Et Al.

No. 3104

April 5, 1935.                    43 P. (2d) 173.

*Thatcher & Woodburn,* for Petitioner:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Julian Thruston,* Deputy Attorneys - General; *Ernest S. Brown,* District Attorney; and *Nash P. Morgan,* Deputy District Attorney, for Respondents:

42

**OPINION**

By the Court, TABER, J.:

This is an original proceeding in prohibition.

Petitioner, United States Lines Company, is now, and at the time of the assessment and other acts complained of in its petition was, a Nevada corporation, and the owner of certain ocean-going steamships, registered by petitioner at the port of New York in compliance with the United States shipping laws, and operated by petitioner exclusively in foreign commerce between the city of New York and certain foreign countries. None of said steamships have ever navigated or been used upon the waters of any river or lake within the State of Nevada, or had a general depot or terminus therein. Petitioner's principal office and place of business in Nevada is at Reno, and its resident agent has his office there.

In September, 1934, the assessor of Washoe County made and entered an assessment for taxation purposes on said steamships, assessed them to petitioner and caused said assessment to be entered on the assessment rolls of Washoe County. Thereafter the taxing officers of said county levied a tax on petitioner based on said assessment, and respondent Frank Campbell, as assessor, demanded payment of the tax from petitioner, who refused to pay it. Petitioner protested to the Nevada tax commission, but was given no relief.

Respondent Campbell, assessor as aforesaid, appeared before respondent court and district judge in January, 1935, and made the affidavit provided for in section 6473 N. C. L. Thereupon citation issued, directing petitioner to appear on the 22d day of January, 1935, and answer under oath concerning its property.. Unless prohibited by this court, respondent court will order petitioner to turn over to the assessor sufficient goods, chattels, or effects to satisfy said tax, and will proceed against petitioner as for contempt of court if it fail to comply with such order. No claim is made by petitioner that said steamships or any of them are taxed elsewhere.

No question is raised as to the propriety of relief by writ of prohibition in case the court finds the property in question not subject to the tax claimed, so the only question before the court is whether said tax is valid.

Petitioner maintains that said tax is void, and bases its contention chiefly upon the following grounds: (1) the legislature has not seen fit to authorize the taxing of the property in question; (2) even if the legislature had attempted to authorize the taxing of these ships, such legislation would be invalid as contravening article 8, section 2, of the state constitution, which restricts the taxing power to property "in this state"; (3) in defining the term "personal property," as used in the general revenue act, section 6419 N. C. L., includes in its enumeration "all steamers, vessels and watercraft of every kind and name navigating or used upon the waters of any river or lake within this state, or having a general depot or terminus within this state," and makes no further or other mention of steamers, vessels, ships, or other watercraft; (4) the maxim "mobilia sequuntur personam" has no place in the revenue law of this state, except as to certain kinds of personal property not involved in this case; (5) it has been the uniform legislative and administrative policy of this state to tax only such tangible personal property as has an actual situs within its territorial boundaries.

In defense of the validity of the tax sought to be

imposed upon petitioner's steamships by Washoe County, respondent rely chiefly upon the following arguments: (1) Petitioner's steamships are to be taxed in Nevada because their owner is domiciled in this state, and they have not acquired an actual situs elsewhere; (2) the words "in this state" as used in article 8, section 2, of the state constitution mean subject to taxation by this state; the same meaning is to be attributed to the words "within this state" as used in section 6418 N. C. L., and to the words "in the state" as used in the state tax levy act for the years 1933 and 1934 (Statutes of Nevada 1933, c. 195, p. 340); (3) petitioner's steamships come within the words "All property of every kind and nature whatsoever, * * *" as used in section 6418 N. C. L., and the words "all chattels of every kind and description" and the words "and all property of whatever kind or nature not included in the term 'real estate,' as said term is defined in this act," as used in section 6419 N. C. L.; (4) under article 10 and article 8, section 2, of the state constitution, the legislature could not lawfully exempt petitioner's steamships from taxation in Nevada, even were it to attempt to do so by express legislative enactment.

Article 8, section 2, of the Constitution of Nevada reads as follows: "All real property and possessory rights to the same, as well as personal property in this state, belonging to corporations now existing or hereafter created, shall be subject to taxation the same as property of individuals; provided, that the property of corporations formed for municipal, charitable, religious, or educational purposes may be exempted by law."

Article 10 of the state constitution: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, when not patented, the proceeds alone of which shall be assessed and taxed, and, when patented, each patented mine shall be assessed at not less than five hundred dollars ($500) except when one

hundred dollars ($100) in labor has been actually performed on such patented mine during the year, in addition to the tax upon the net proceeds; and, also excepting such property as may be exempted by law for municipal, educational, literary, scientific or other charitable purposes."

Section 6418 Nevada Compiled Laws 1929, provides that "All property of every kind and nature whatsoever, within this state, shall be subject to taxation except:" (exemptions listed).

Section 6419 N. C. L., being section 6 of the general revenue act, provides in part as follows: "The term 'personal property,' whenever used in this act, shall be deemed and taken to mean, and it is hereby declared to mean and include * * * all goods, wares and merchandise, all chattels of every kind and description, * * * all steamers, vessels and watercraft of every kind and name navigating or used upon the waters of any river or lake within this state, or having a general depot or terminus within this state; * * * and all property of whatever kind or nature not included in the term 'real estate,' as said term is defined in this act."

Petitioner directs attention to section 6421 N. C. L. which provides in part that within a certain period each year the county assessor "shall ascertain, by diligent inquiry and examination, all property in his county, real and personal, subject to taxation," and the names of the owners thereof.

Petitioner further points out that the act fixing the state tax levy for 1933 and 1934 (Statutes of Nevada 1933, c. 195, p. 340) levies an ad valorem tax, for each of said years, for state purposes, on all taxable property "in the state," except such property as is by law exempted from taxation.

■ Unless it has acquired an actual situs elsewhere, the situs of a ship, for purposes of taxation, is at the domicile of the owner, notwithstanding it may never have been in the state of such domicile, may not, by reason of draught and depth of water, be able to go to any place in such state, and may be registered or enrolled

in a different state. Southern Pacific Co. v. Commonwealth of Kentucky, 222 U. S. 63, 32 S. Ct. 13, 18, 56 L. Ed. 96; Ayer & Lord Tie Co. v. Kentucky, 202 U. S. 409, 26 S. Ct. 679, 50 L. Ed. 1082; Tacoma Oriental S. S. Co. v. Tallant (D. C.), 51 F. (2d) 359; Cooley on Taxation (4th ed.), vol. 2, sec. 453; 61 C. J. 225; 26 R. C. L. 281; Stimson, Jurisdiction and Power of Taxation, p. 9; Note 29 L. R. A. (N. S.) 105.

■ "As between two or more states, for purposes of taxation, a corporation has its domicile in the state where it was created. As to this there is no contention." Fletcher Cyc. Corp., vol. 14, sec. 6946. To the same effect see Cooley, sec. 484.

Petitioner's domicile being in Washoe County, Nevada, and there being no contention that its steamships, for the purposes of taxation, have any actual situs anywhere, it is clear that they are taxable in this state unless the constitution or statutes of Nevada render inapplicable the general rule enunciated above. We are thus brought to a consideration of the main question in this case, namely, whether petitioner's steamships, for the purposes of taxation, are in this state, or within this state, as those terms are used in the constitution and statutes hereinbefore quoted.

In the case of Pacific Cold Storage Co. v. Pierce County, 85 Wash. 626, 149 P. 34, 35, the court, having under consideration the meaning of the words "in the state," as used in the constitution of the State of Washington, said: "In construing the meaning of this clause of the constitution, it must be remembered that it was used with reference to the taxing power of the state, that it is a term of inclusion, rather than a term of exclusion, and that it was meant to secure the taxation of all property subject to taxation by the state, and not to define or mark limits within which exemption from taxation might be legal or illegal. In other words, when the constitution said that 'all property in the state * * * shall be taxed,' it meant to say that all property subject to taxation by the state shall be taxed, regardless of the question whether or not the

property could be said to be technically within, or have an actual situs within the state."

In the case of Olson v. City and County of San Francisco, 148 Cal. 80, 82 P. 850, 852, 2 L. R. A. (N. S.) 197, 113 Am. St. Rep. 191, 7 Ann. Cas. 443, a sea-going vessel engaged in commerce on the high seas, temporarily registered in the State of Washington and not permanently registered at San Francisco, but whose managing owner resided at San Francisco, was held by the supreme court of California to be taxable in that state, notwithstanding it had never been in the waters of California. The court, after pointing out that this vessel had no actual situs in any state, said: "Under the well-settled law, this vessel had its legal situs in the city and county of San Francisco on the first Monday of March, 1901, and for the purpose of taxation was at that time within that city and county. It was 'property in the state,' within the meaning of those words as used in section 1, art. 13, of the constitution, relating to revenue and taxation, and was by such provision required to be taxed here."

People ex rel. Astor Trust Co. v. State Tax Commission, 174 App. Div. 320, 160 N. Y. S. 854, 856, quotes section 260 of the New York Tax Law in part, as follows: "In determining the separate values of the property covered by any such mortgage within and without the state, for the purpose of ascertaining the proportion of the principal indebtedness secured by the mortgage which is taxable under this article, the state board of tax commissioners shall consider only the value of the tangible property covered by each mortgage. * * * "

In that case it appears that a New York corporation engaged, as one branch of its business, in menhaden fishing along the Atlantic Coast. All of its vessels were enrolled and licensed under the laws of the United States to carry on the fisheries, and each of the certificates of enrollment was issued and recorded at the port of Greenport, N. Y., which port was designated in each certificate as the "home port." Ninety percent of the fishing

was done off the coasts of states other than New York, twelve of the company's vessels were engaged exclusively in fishing outside of the State of New York, and all its vessels wintered at Portsmouth, R. I. The principal office and place of business of the company was in the county of Suffolk, N. Y. The vessels had not acquired an actual situs in any other state. The court said: "The taxable situs of a vessel which has no permanent location within another jurisdiction is the domicile of the owner. Southern Pacific Co. v. Commonwealth of Kentucky, 222 U. S. 63, 32 S. Ct. 13, 56 L. Ed. 96. The domicile of the owner, as well as the port of enrollment of the vessels, having been at a place within the State of New York, such was the situs of the vessels, and they must be held to have been tangible property within the state, within the intent and meaning of section 260 of the Tax Law."

Petitioner cites four tax cases holding that such terms as "within this state," "within the state," and "in this state" mean actually and physically situated within the territorial boundaries of the state. These cases are People ex rel. Hoyt v. Commissioners of Taxes, 23 N. Y. 224; State v. Harrington, 68 Mont. 1, 217 P. 681, 683; Converse v. Northern Pac. Ry. Co. (C. C. A.) 2 F. (2d) 959; Guaranty Trust Co. v. State, 36 Ohio App. 45, 172 N. E. 674.

People ex rel. Hoyt v. Commissioners of Taxes, supra, is a New York case decided in 1861. The property sought to be taxed was physically situated and had an actual situs outside the State of New York. The court itself in that case made it plain that the rule set forth was intended to apply only to property having an actual situs. On page 240 of 23 N. Y., the court says: "On the other hand, I have no doubt that ships at sea registered at a port within this state and consequently having no situs elsewhere are justly taxable to the resident owner." If petitioner's steamships had an actual situs outside this state, it would be clear that they could not be taxed here, but it is a prerequisite to the taxation

of such property at its actual situs that it have such a situs.

State v. Harrington, supra, is also a case where the property sought to be taxed had a situs in another state. The court stated the question in the following language: "The concrete question presented is whether the laws of Montana command the assessment of the shares of stock of a resident of this state, even though they have a business situs in another state." Here again we have a case which does not involve the question of taxability of tangible personal property situate outside the state of the owner's domicile, but having no situs outside such state. It is interesting also to note that the court expressly recognizes that under some circumstances the maxim mobilia sequuntur personam would be applicable in the State of Montana. This appears from the following statement near the end of the opinion: "Of course, if the shares of stock in a given instance are kept out of the state for the purpose of evading taxation, they are not within the rule as to business situs, but are controlled by the maxim mobilia sequuntur personam, and will be taxed at the domicile of their owner."

In Converse v. Northern Pac. Ry. Co., supra, the facts are very dissimilar from those in the case at bar. It is an income tax case, and the property sought to be taxed was the income of appellee from its interstate as well as its intrastate business. The circuit court of appeals in that case took pains to point out that in construing the meaning of the expression "within the state" as used in the income tax law the court should look to the intention of the legislature in enacting that particular statute. In other words, according to that court, it would not be proper to arrive at the meaning of such an expression under a particular income tax statute by referring to its meaning as used in a general revenue act. The court used this language: "Whenever such terms are used in a statute, they must be construed in accordance with the intention of the legislature in enacting the particular

statute." Conversely, the meaning of such an expression in an income or inheritance tax statute would not be controlling in determining its meaning in a general tax statute or constitutional provision relating to general taxes. .

Guaranty Trust Co. v. State, supra, is also a case where the facts are very dissimilar from the instant case. In that case the owner of the property was a nonresident, the property was money on deposit in an Ohio bank, and the words whose meaning was to be construed were from an inheritance tax statute.

Petitioner has also placed much reliance upon State v. Shaw, 21 Nev. 222, 29 P. 321, 322, wherein this court made the following two statements: (a) "Generally, in other revenue systems, it is provided that personal property shall be taxed where the owner resides, if he be a resident of the state. But, in pursuance of this authority to regulate the matter as it may please, our legislature has adopted the more equitable rule of taxing it where it is located, where it receives the protection of the law, and where the expense of such protection must be incurred." (b) "As already stated, the fiction that personal property follows the person of the owner has no place in our revenue law, except as to money, gold-dust, and bullion. All other property is to be assessed in the county where it belongs. Where it remains permanently in a county, or only leaves it for a temporary purpose, this fact is conclusive, and it must be taxed there, and cannot be taxed anywhere else." In this case there was no question of tangible personal property outside the state which had no actual situs. The question before the court in State v. Shaw was, In which of two counties in this state should certain livestock be taxed?

Not one of the foregoing cases cited by petitioner was related to shipping, and, what is more important, not one of them presented for the court's consideration a case where tangible personal property belonging to a resident of the state, but being outside the state, had no actual situs.

Petitioner points out that the legislature of this state has always pursued the policy of taxing only property actually within the state, and that the tax officers have maintained the same policy. It is argued that this legislative and executive construction, having continued for so many years, should be given great weight by this court in determining the meaning of the expressions "within this state," "within the state," and "in this state." But none of the departments of the state, so far as we are advised, have until very recently been confronted with a situation such as is presented by this case. We are dealing here with tangible personal property outside the state, and not having actual situs anywhere. Any policy that may have grown up concerning property having an actual situs either within or outside the state cannot be of much help in a case which presents for consideration an entirely new situation, involving tangible personal property with no actual situs.

It may be observed here that this court, in Bowman v. Boyd, 21 Nev. 281, 30 P. 823, 825, quoted in part from Meserve v. Folsom, 62 Vt. 504, 508, 20 A. 926, as follows: "It was the duty of the plaintiff to have a taxable residence somewhere. Though it is true that a tax assessment is a proceeding in invitum, and the law which operates to take from a citizen his property for public purposes is to be strictly construed, nevertheless the taxpayer is under a duty, in view of the protection afforded him by the law, to contribute his just proportion to support the government under which he lives, and the question of his liability to taxation in a given locality is to be tried in the light of this fact." Likewise, in 61 C. J. 511, it is said that "In general, for purposes of taxation a person must have a domicile or residence somewhere."

■ We hold that petitioner's steamships, for purposes of taxation, were, at the time of the assessment and levy complained of, "in this state," "within this state," and "in the state" as those terms are used, respectively, in article 8, section 2, of the state constitution, section

6418 N. C. L., and chapter 195, Statutes of Nevada 1933.

■ It remains to be considered whether the language of sections 6418 and 6419 is broad enough to include petitioner's steamships, particularly in view of the fact that the latter section, in enumerating various kinds and items of personal property, lists all watercraft "navigating or used upon the waters of any river or lake within this state, or having a general 'depot or terminus within this state." It is contended on the one hand, under the rule of strict construction, that such property as plaintiff's steamships is not included in our taxing statutes, and on the other hand that the words last above quoted from section 6419 N. C. L. operate to exclude such property under the maxim "expressio unius est exclusio alterius." We deem it unnecessary, in considering this argument, to enter into an extended discussion of the rules of statutory construction, because we agree with what was said by Chief Justice NORCROSS (now United States district judge for Nevada) in the case of State v. Wells Fargo & Co., 39 Nev. 505, 150 P. 836, 842, wherein, after quoting from the state constitution and general revenue act, he says, in delivering the opinion of the court: "It is clear from the foregoing excerpts, we think, that the constitution authorizes and the statute directs that all property of every kind, character, and nature, not specifically exempted, is subject to taxation. The fact that the legislature at the time of the adoption of the statute, supra, may not have indulged in the hope even that property of the appellant company, other than that visible to the naked eye, might be subject to taxation, nevertheless it used language clearly evincing an intent to cover every possible contingency and to · exclude from the burden of taxation only such property as was specifically exempted."

Many years earlier, in the case of State v. Carson City Savings Bank, 17 Nev. 146, 30 P. 703, 704, this court likewise said: ·"Since the constitution declares that all property shall be taxed except mines and other

property for certain enumerated purposes, the legislature cannot exempt any taxable property, except for the purpose stated."

To the same effect see 61 C. J. 385, and Cooley on the Law of Taxation (4th ed.), secs. 661–663. Some years ago the legislature of the State of Washington attempted, by express legislative enactment, to exempt certain ships or vessels from taxation. The language of the statute was as follows: "Provided, that the ships or vessels registered in any custom-house of the United States within this state, which ships or vessels are used exclusively in trade between this state and any of the islands, districts, territories, states of the United States, or foreign countries, shall not be listed for the purpose of or subject to taxation in this state, such vessels not being deemed property within this state." (Rem. & Bal. Code, Wash., sec. 9093).

Referring to this statute, the court, in Pacific Cold Storage Co. v. Pierce County, supra, said:

"Manifestly the legislature attempted to exempt from taxation vessels situated as this vessel is situated and used for the purposes for which it is used, and that the claim of the appellant to an exemption is sound if it is within the power of the legislature to make the exemption. It is the contention of the taxing authorities of Pierce County that the legislature is without such power, and this presents the sole question to be determined upon this appeal.

"It will hardly be denied in the light of our present decisions that the legislature cannot, under the constitutional provision requiring a uniform and equal rate of taxation on all property 'in the state,' lawfully exempt from taxation corporeal personal property having an intrinsic value and having a situs at some place within the state. * * * So, here, since the vessel in question has intrinsic value, it cannot be exempted from taxation by the legislature unless it can be said not to be property 'in the state,' within the meaning of that clause as used in the constitution.

"In construing the meaning of this clause of the constitution, it must be remembered that it was used with reference to the taxing power of the state, that it is a term of inclusion, rather than a term of exclusion, and that it was meant to secure the. taxation of all property subject to taxation by the state, and not to define or mark limits within which exemption from taxation might be legal or illegal. In other words, when the constitution said that 'all property in the state * * * shall be taxed,' it meant to say that all property subject to taxation by the state shall be taxed, regardless of the question whether or not the property could be said to be technically within, or have an actual situs within the state. That a vessel situated and used as this vessel is situated and used would be taxable as property in the state, in the absence of legislative regulation to the contrary, cannot be gainsaid or questioned. It is so held in all of the cases. While some confusion has arisen as to the proper place of taxation where the port of registry, the home port, and the domicile of the owner of the vessel are at different places, no court has as yet held that such vessels are not subject to taxation at some one of the places. So, here, since the vessel is subject to taxation by the state, we think the legislature is without power to exempt it, and we so hold. * * *

"This property is owned by a citizen of the state having its domicile within the state. The place of the owner's domicile is the registered as well as the home port of the vessel. Its permanent situs is therefore within the state, and its absence therefrom and stoppages elsewhere are but transient and temporary. Stated in another way, the domicile of the owner fixes the situs of the vessel where it does not appear that it has acquired an actual situs elsewhere."

The tax complained of was and is valid, and these proceedings must therefore be dismissed. This holding will not result in double taxation, because so long as petitioner is domiciled in Nevada, the ships in question cannot be taxed elsewhere.

■ Finally, it may be observed that, where tangible personal property has an actual situs, there is reason for saying, as in State v. Shaw, supra, that it should be taxed "where it is located, where it receives the protection of the law, and where the expense of such protection must be incurred." But where such property has no actual situs anywhere, we have the situation with which the court was dealing in Southern Pac. Co. v. Kentucky ex rel. Alexander, supra, when it said: "Take the case in hand. The Southern Pacific Company is a corporation having much extraordinary power. It only exists and exercises this power by virtue of the law of Kentucky. By the law of its being it resides in Kentucky, and there maintains its general office, and there holds its corporate meetings. To say that the protection which the corporation receives from the state of its origin and domicile affords no basis for imposing taxes upon tangibles which have not acquired an actual situs under some other jurisdiction is not supportable upon grounds of either abstract justice or concrete law. What is the protection accorded these vessels at any of the ports to which they temporarily go for purpose of business? What protection do they receive from the state or city of New York other than that accorded to every other ship which visits that port, foreign or domestic, for repairs, supplies, or other business?"

Writ dismissed.

ON PETITION FOR REHEARING

June 1, 1935.

*Per Curiam:*

Rehearing denied.